UNITED STATES of America

v.

Carlyle Eustace WONG, A/K/A Carlyle Wong, Appellant.

No. 92–5570.

United States Court of Appeals, Third Circuit.

Argued June 22, 1993.

Decided July 30, 1993.

Michael Chertoff, U.S. Atty., Glenn J. Moramarco (argued), Edna B. Axelrod, Asst. U.S. Attys., Newark, NJ, for appellee.

John C. Whipple (argued), Whipple, Ross & Hirsh, Parsippany, NJ, for appellant.

Before: STAPLETON, MANSMANN and HUTCHINSON, Circuit Judges.

### OPINION OF THE COURT

MANSMANN, Circuit Judge.

We must decide whether it constitutes cumulative punishment for the same offense ("double counting"), as discussed in *United States v. McNeill,* 887 F.2d 448 (3d Cir.1989), *cert. denied,* 493 U.S. 1087, 110 S.Ct. 1152, 107 L.Ed.2d 1055 (1990) to enhance a defendant's sentence under *both* § 2B1.1(b)(5) of the Sentencing Guidelines, for engaging in more than minimal planning and under § 3B1.1(c), for acting as an organizer or leader of criminal activity. Because we find that these separate enhancement sections address different sentencing concerns and that the Sentencing Commission intended that both enhancements be applied, in tandem when appropriate, we conclude that the district court did not err in enhancing Wong's sentence under both sections.

In addition, we interpret the phrase "gross receipts from participation in the offense" as employed in the Guidelines for purposes of a § 2B1.1(b)(7)(B) enhancement. We find that "gross receipts from the offense" includes all property which is obtained either directly or indirectly as a result of the offense. Thus, the district court did not err in enhancing Wong's sentence under § 2B1.1(b)(7)(B). We will affirm the district court's judgment of sentence.

### I.

From June 30, 1986 until January 16, 1992, Carlyle Eustace Wong was employed with First Fidelity Bank located in Newark, New Jersey. Initially, Wong was employed in the Trust Operations Department of First Fidelity, but was later elevated to the positions of Benefits Specialist and Trust Operations Supervisor. During this time, Wong was given

the responsibility for, among other things, the transferring of funds involving the bank's suspense or same day account. As a supervising employee of First Fidelity Bank with access to funds in the bank's suspense account, and as a former employee of the Trust Operations Department, Wong was able to use his position and his understanding of First Fidelity's accounting systems to engineer a fraud that consisted of Wong's illegally wire-transferring more than $2.5 million from First Fidelity Bank to bank accounts controlled by others—Derrick Davis, Dennis Singh and a company known as Brown Betty Industries.[1]

Wong was arrested on January 16, 1992. On January 22, 1992, Wong was indicted in the District of New Jersey in a three count indictment charging him with conspiracy to defraud the First Fidelity Bank, scheming to defraud First Fidelity, and embezzlement in violation of 18 U.S.C. § 656 and 18 U.S.C. § 2. On April 28, 1992, Wong pled guilty to a Superseding Information which charged that from October 1988 to January 1992, Wong as an employee of the First Fidelity Bank, embezzled approximately $2.4 million from the Bank in violation of 18 U.S.C. § 656 and 18 U.S.C. § 2.

On September 28, 1992, Wong was sentenced under the Sentencing Guidelines to 84 months of imprisonment and five years of supervised release. His sentence was based on a total offense level of 27. In computing Wong's total offense level, the district court determined that Wong had engaged in more than minimal planning under § 2B1.1(b)(5) of the Sentencing Guidelines which provides for a two level enhancement, and that he was an organizer or leader of this offense pursuant to § 3B1.1(c) which also provides for a two level enhancement. In addition, Wong received a four level enhancement for having individually derived over one million dollars in gross receipts from the commission of this offense. We turn now to Wong's allegations of error.[2]

## II.

Wong asserts that the district court erred in awarding him a two-level increase pursuant to U.S.S.G. § 2B1.1(b)(5) for more than minimal planning and an additional two-level increase pursuant to U.S.S.G. § 3B1.1(c) for his role as an organizer or leader.[3] He submits that his sentence may be enhanced under § 2B1.1(b)(5) for more than minimal planning *or* under § 3B1.1(c) for acting as an organizer or leader of criminal activity, but not both, because the conduct contemplated in 2B1.1(b)(5) is a necessary component of the conduct contemplated in 3B1.1(c). He contends that more than minimal planning is necessarily present whenever a defendant is an organizer or leader; to award a two level increase under both sections constitutes impermissible "double counting" and that as a result, he is being subjected to two separate punishments for the same conduct.[4]

Whether a judge may enhance under the two separate Guidelines involved

---

1. Davis was employed at Prudential Bache Securities in New York. Singh, Wong's cousin, was employed with Merrill, Lynch, Pierce, Fenner and Smith. Brown Betty Industries is a New York subsidiary of Vinelli Industries, a Guyana company. Wong was born in Guyana and resided there for approximately 24 years.

2. The district court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction to review the sentence imposed on Wong pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

3. The relevant sections are as follows:

   **§ 3B1.1** *Aggravating Role*
   (c) if the defendant was an organizer, leader, manager or supervisor in any criminal activity other than described in (a) or (b) increase by 2 levels.

   **§ 2B1.1** *Larceny, Embezzlement and other Forms of Theft*
   (b) specific offense characteristics
   (5) If the offense involved more than minimal planning, increase by 2 levels.

4. Initially, the government argued that Wong was not subjected to two separate punishments for the same conduct. In its sentencing memorandum, the government contended that it relied on different facts to support each of the enhancements. Clearly, if this were true and the district court relied on different facts to support each enhancement, Wong agrees that both enhancements would be proper. We will assume here that the facts that support Wong's enhancement for more than minimal planning and his enhancement for managerial role are so intertwined, they are essentially based on the same conduct.

here is a question of legislative intent. We follow the clear, unambiguous language of the Guidelines if there is no discernable manifestation of contrary intent. We exercise plenary review in determining whether the district court misapplied the adjustment provisions of the Sentencing Guidelines. *United States v. Georgiadis,* 933 F.2d 1219 (3d Cir. 1991); *United States v. Bierley,* 922 F.2d 1061, 1064 (3d Cir.1990); *United States v. McNeill,* 887 F.2d 448 (3d Cir.1989), *cert. denied,* 493 U.S. 1087, 110 S.Ct. 1152, 107 L.Ed.2d 1055 (1990). In interpreting the Guidelines, we must apply them as written. *United States v. Williams,* 954 F.2d 204 (4th Cir.1992).

### III.

Our analysis thus begins with the language of the Sentencing Guidelines. The application instructions provide that the sentencing judge is to determine a defendant's sentence in the following manner:

(a) Determine the applicable offense guideline from Chapter Two....

(b) Determine the base offense level and apply an appropriate specific offense characteristics contained in the particular guideline in Chapter Two in the order listed.

(c) Apply the adjustments as appropriate related to victim, role, and obstruction of justice from Parts A, B and C of Chapter Three.[5]

*      *      *      *      *      *

U.S.S.G. § 1B1.1; *United States v. McNeill,* 887 F.2d at 455.

The Application Note to Part B—General Application Principles, states: "The offense level adjustments from more than one specific offense characteristic within an offense guideline are cumulative (added together) unless the guideline specifies that only the greater (or greatest) is to be used." Application Note 4. This language indicates to us that the Sentencing Commission intended to

state specifically when such characteristics are not to be cumulative.

■ We find significant that the Guidelines themselves do not contain an express prohibition on the application of both of these offense level enhancements. As with statutory language, the plain and unambiguous language of the Sentencing Guidelines affords the best recourse for their proper interpretation. *United States v. Newman,* 982 F.2d 665, 673 (1st Cir.1992), *petition for cert. filed,* 61 U.S.L.W. 3751 (Apr. 22, 1993), (citing *United States v. Williams,* 954 F.2d 204, 206 (4th Cir.1992)) (held "double counting" was required since Sentencing Guidelines must be applied as written) and *United States v. Goolsby,* 908 F.2d 861, 863 (11th Cir.1990) (refusing "to fashion an exception [to double counting] since Commission has demonstrated its ability to do so in those areas it has deemed an exception to be appropriate").

The Sentencing Commission's awareness of potential double counting issues is clearly reflected in other Guidelines provisions. Indeed, the Sentencing Guidelines are explicit when double counting is forbidden and identify the circumstances in which certain enhancements may not be applied. For example, the Application Notes to Sections 3A1.1, 3A1.2 and 3A1.3 for "victim related adjustments" clearly provide that an offense level increase based on specific conduct is not permitted if the offense guideline already takes into account that same conduct. *See, e.g.,* U.S.S.G. § 3A1.1. *Vulnerable Victim* Application Note 2 (no "victim related" adjustment when offense guideline specifically incorporates same Section 3A1.1 factor); § 3A1.2. *Official Victim* Application Note 3 ("do not apply this adjustment [official victim] if the offense guideline specifically incorporates this factor."); § 3A1.3. *Restraint of Victim* Application Note 2 (same).

■ Because the Guidelines are explicit when two Sentencing Guideline sections may not be applied at the same time, the principle of statutory construction, "expressio unius

---

5. In this case, Wong received his two-level enhancement for more than minimal planning pur-

suant to step (b) above, and he received the

est exclusio alterius,"[6] applies. *See United States v. Vickers,* 891 F.2d 86, 88 (5th Cir. 1989) (Sentencing Guidelines subject to rules of statutory construction); *United States v. Rocha,* 916 F.2d 219, 243 (5th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2057, 114 L.Ed.2d 462 (1991) (enumeration of specific exclusions from operation of statute is indication that statute should apply to all cases not specifically excluded). "Following these principles, we conclude that the exclusion of a double counting provision in the sections involved here was by design". *United States v. Curtis,* 934 F.2d 553, 556 (4th Cir.1991). Accordingly, an adjustment that clearly applies to the conduct of an offense must be imposed unless the Guidelines exclude its applicability.

## IV.

The specific "double counting" issue in this case involving an adjustment for role in the offense along with an adjustment for more than minimal planning was specifically addressed by the Court of Appeals for the Fourth Circuit in *United States v. Curtis, supra.* Curtis, after conviction for falsely impersonating an officer of the United States, received a two-level increase for his role as a manager or organizer as well as a two-level increase for more than minimal planning. The Court of Appeals rejected Curtis' arguments that the award of both enhancements constituted impermissible double counting, noting that the Guidelines explicitly provide for situations in which double

counting is forbidden. 934 F.2d at 556. While the court of appeals in *Curtis* acknowledged that double counting is impermissible under the Guidelines, the court found that only when the Guidelines *explicitly* prohibit double counting will it be impermissible to raise a defendant's offense level under one provision when another offense Guideline already takes into account the same conduct. In all other cases, the offense level adjustments for each Guideline are cumulative. Thus, the court concluded it was appropriate to increase Curtis' offense level under 2B1.1(b)(4) for more than minimal planning and under 3B1.1(c) for being a manager or organizer.[7]

■ In allowing an upward adjustment for role in the offense, in addition to an upward adjustment for more than minimal planning, we effectuate the intent of the Sentencing Commission in enacting these two guideline provisions. Adjustment under § 2B1.1(b)(5) and 3B1.1(c) are independent sentencing considerations, responding to different evils.

■ The adjustment for more than minimal planning is a specific offense characteristic which was intended to distinguish between relatively simple crimes and more sophisticated ones. Whether a defendant's crime involved more than minimal planning considers the deliberative nature of a defendant's conduct and criminal scheme. More than minimal planning exists if affirmative steps were taken to conceal the offense. It is deemed present in any case involving re-

additional two-level enhancement for his role in the offense pursuant to step (c).

**6.** The expression of one thing is the exclusion of another. Black's Law Dictionary 521 (5th ed. 1979).

**7.** The case relied upon by Wong, *United States v. Romano,* 970 F.2d 164 (6th Cir.1992), *reh'g en banc denied,* (6th Cir.1992), presents a somewhat different issue. *Romano* involved a four level enhancement under § 3B1.1(a) (applicable to an individual who is a supervisor of five or more people) and *not* an adjustment under § 3B1.1(c) implicated here. In *Romano,* the court concluded that "§ 3B1.1(a) already takes into account the conduct penalized in § 2F1.1(b)(2) because, by its very nature, being an organizer or leader of more than five persons necessitates more than minimal planning." 970 F.2d at 166.

Subsequent to the filing of appellant's brief, the Court of Appeals for the Eighth Circuit, addressing the same Guidelines provisions as the *Romano* court, disagreed with the decision reached in that case. In *United States v. Willis,* 997 F.2d 407 (8th Cir.1993), the Court of Appeals held that the Sentencing Guidelines do not expressly forbid the application of §§ 2F1.1(b)(2) and 3B1.1; thus, the district court did not err in enhancing Willis' offense level by four levels pursuant to § 2F1.1(b)(2) for being an organizer or leader of criminal activity as well as enhancing his offense level by two levels for engaging in more than minimal planning under § 3B1.1.

We have no occasion here to take a position on whether simultaneous enhancement under § 2F1.1(b)(2) and § 3B1.1 would involve impermissible double counting.

peated acts over a period of time. The Guidelines target more than minimal planning because it is "indicative of an intention and potential to do considerable harm," and "is often related to increased difficulties of detection and proof." U.S.S.G. § 2B1.1 Background Commentary. *See also United States v. Georgiadis*, 933 F.2d at 1226–27.

■ On the other hand, the adjustment for role in the offense addresses concerns about the relative responsibilities of those involved in the commission of the offense, punishing those more harshly who assume a leadership role. *See* U.S.S.G. § 3B1.1 (Background commentary). The upward adjustments mandated respectively by sections 2B1.1(b)(5) and 3B1.1(c) operate independently of each other because it is possible that an individual, who is not necessarily an organizer or leader, could engage in more than minimal planning. We can envision an offense where more than minimal planning is involved, but the nature of the offense does not require the involvement of other people.

The converse of this situation could also occur. It is possible for us to envision a situation in which one is an organizer or leader in a scheme that did not require a great deal of planning.[8] Under these scenarios, both enhancements would not simultaneously come into play. Nonetheless, we hold that where a defendant is not only a participant in a sophisticated criminal scheme, but is also one of the more culpable individuals in that scheme, the two enhancements may be applied in tandem.

Thus, we find that the district court did not err in enhancing Wong's sentence under both Sections 2B1.1(b)(5) and 3B1.1(c) of the Sentencing Guidelines.

## V.

Wong asserts next that his base offense level should not have been enhanced under Section 2B1.1(b)(7)(B) of the Sentencing Guidelines as he did not individually derive more than $1 million in gross receipts from this offense. This contention, too, is without merit.

■ In determining that Wong derived more than $1 million in gross receipts, the district court combined checks written by Derrick Davis, Wong's co-conspirator, for Wong's benefit totaling approximately $750,000 and Wong's transfer of approximately $476,000 from First Fidelity Bank to Brown Betty Industries. Wong asserts that he has no ownership interest in, or control of, Brown Betty Industries; thus, the district court should not have attributed the $476,000 transferred to Brown Betty Industries to him personally. Wong relies on Application Note 11 which indicates that as used in subsection (b)(7)(B), the requirement that "the defendant derived more than $1,000,000 in gross receipts from the offense, generally means that the gross receipts to the defendant individually, rather than to all participants, exceeded $1,000,000."[9]

We have no difficulty concluding here that Wong was indeed a beneficiary of the funds he transferred to Brown Betty Industries, albeit an indirect one. Wong does not dispute that he personally arranged for the wire transfer of approximately $476,000 from a First Fidelity account to Brown Betty Industries, a subsidiary of Vinelli Industries, a Guyana based company. In October or November of 1991 Vickram Oditt, managing

---

**8.** Factors the court should consider in determining whether a defendant was an organizer, leader, manager or supervisor, include

the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.

Application Note 3 to § 3B1.1, Aggravating Role. We note here that "the degree of participation in planning or organizing the offense" is just one of the factors a court may consider. Thus, we must reject Wong's assertion that more than minimal planning is necessarily present whenever a defendant is an organizer or leader.

**9.** Wong further submits that "this provision contemplates only those proceeds which he has actually received as a result of his offense and does not permit speculation as to what he might receive at a future time." (Appellant's brief at p. 9). We reject this contention as without merit, and find that despite its executory nature, the promissory note is includable in Wong's gross receipts.

director of Vinelli Industries, negotiated a loan of $300,000 from Wong. On December 31, 1991, Vinelli Industries executed a $300,000 promissory note which provided that the principal of the $300,000 loan would be repaid *directly to Wong* in quarterly installments plus 8.5% annual interest. (Appellants' Appendix No. 000038.)

The term "gross receipts from the offense" as employed in Section 2B1.1(b)(7)(B) includes "all property, real or personal, tangible or intangible which is obtained *directly* or *indirectly* as a result of the offense." Based on this language, we conclude that the $300,000 promissory note Wong received from Vinelli Industries constitutes property obtained as a result of this offense and that the district court properly included this amount in calculating Wong's individual gross receipts from the offense.

### VI.

For the foregoing reasons, we will affirm the judgment of the district court.