

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2001

# USA v. Philiposian

Precedential or Non-Precedential:

Docket 00-3796

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"USA v. Philiposian" (2001). *2001 Decisions.* Paper 219.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/219

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed September 25, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-3796

UNITED STATES OF AMERICA

v.

DOMINIC E. PHILIPOSIAN,
          Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Criminal No. 99-cr-00040-1)
District Judge: Honorable Jay C. Waldman

Submitted Under Third Circuit LAR 34.1(a)
July 24, 2001

Before: ROTH, BARRY, and AMBRO, Circuit Judges

(Opinion filed: September 25, 2001)

          MAUREEEN KEARNEY ROWLEY,
           ESQUIRE
          Chief Federal Defender
          DAVID L. MCCOLGIN, ESQUIRE
          Assistant Federal Defender
          Defender Association of Philadelphia
          Federal Court Division
          The Curtis Center, Suite 540 West
          Independence Square West
          Philadelphia, Pennsylvania 19106

          Counsel for Appellant

        MICHAEL L. LEVY, ESQUIRE
        United States Attorney
        ROBERT A. ZAUZMER, ESQUIRE
        Assistant United States Attorney,
         Chief of Appeals
        FAITHE MOORE TAYLOR, ESQUIRE
        PETER F. SCHENCK, ESQUIRE
        Assistant United States Attorney
        United States Attorney's Office
        Eastern District of Pennsylvania
        615 Chestnut Street, Suite 1250
        Philadelphia, Pennsylvania 19106

        Counsel for Appellee

OPINION OF THE COURT

AMBRO, Circuit Judge:

This appeal raises two questions. First, we address whether the District Court properly applied a two-level sentence enhancement pursuant to United States Sentencing Guidelines ("U.S.S.G." or the "Sentencing Guidelines") S 5K2.17, for possession of a high-capacity, semiautomatic firearm in connection with a crime of violence. Second, we decide whether the District Court properly applied another two-level sentence enhancement, pursuant to U.S.S.G. S 5K2.2, which allows for an upward departure in cases where significant physical injury was inflicted by the defendant. We answer both of these questions affirmatively and therefore affirm.

I.

On January 12, 1999, after contemplating suicide, Dominic E. Philiposian picked up his rifle, an AK-47, and loaded it with a double thirty round magazine containing fifty-nine rounds of ammunition. The AK-47 is a high velocity military-style weapon that increases the speed at which a bullet travels, thereby increasing both the shooter's accuracy and the resulting risk of death or serious bodily injury. Philiposian's magazine contained two types of

2

ammunition: full metal jacket ammunition designed for warfare, and jacketed and hollow point bullets designed to expand on contact and cause aggravated wounds.

At the same time, Theresa Ebinger, a letter carrier for the United States Postal Service, was delivering mail to the 600 block of 11th Avenue in Prospect Park, Pennsylvania, where Philiposian lived in a third floor apartment. Instead of shooting himself, Philiposian noticed Ms. Ebinger walking outside, pointed his AK-47 at her, and fired twice through his closed apartment window. One bullet hit Ms. Ebinger in the arm, ripping a four centimeter hole just above her left elbow. The bullet then entered her abdomen and bullet fragments were spread throughout, severing the left lobe of her liver, perforating her duodenum, lacerating her pancreas, and fracturing her ribs.

As a result of the injuries, Ms. Ebinger received emergency surgery and remained in the hospital for one month. She also underwent four additional surgeries for her arm but has not regained full use of her hand and arm due to the extensive nerve damage. Additionally, doctors implanted a steel cylindrical sleeve within her arm to contain the many unrepaired bone fragments. In a letter to the Probation Department, Ms. Ebinger stated that she suffers serious physical pain every day, including pain and indigestion when she eats, serious pain in her arm, as well as the inability to perform daily functions such as cutting food or typing letters.

After being apprehended outside his building, Philiposian was charged via a three count indictment with (I) assault on a federal employee pursuant to 18 U.S.C. S 111, (II) attempted murder of a federal employee pursuant to 18 U.S.C. S 1114, and (III) use of a weapon during a crime of violence pursuant to 18 U.S.C. S 924(c). At the completion of a non-jury trial, the District Court found Philiposian guilty of counts I and III, the assault and weapon charges, but found him not guilty of count II, the attempted murder charge.

On November 2, 2000, Philiposian appeared before the District Court for sentencing, and received fifty-four months imprisonment for the assault charge and a consecutive one

3

hundred twenty month prison sentence for the weapon charge. In addition, the District Judge imposed three years supervised release, restitution in the amount of $261,054.04, and a special assessment of $100. In arriving at that sentence, the District Court started with a base offense level of fifteen under U.S.S.G. S 2A2.2, added six levels pursuant to U.S.S.G. S 2A2.2(b)(3)(C) because the offense caused permanent or life-threatening injury, and then subtracted two levels for acceptance of responsibility pursuant to U.S.S.G. S 3E1.1(a). This resulted in a total offense level of nineteen and a criminal history category of I.

The Government then made two motions for upward departures. First, pursuant to U.S.S.G. S 5K2.17, it requested an upward departure for possession of a high-capacity semiautomatic firearm in connection with a crime of violence. The prosecutor argued that Philiposian's use of the AK-47 semiautomatic rifle qualified for an upward departure because "the significant injuries sustained are a direct result of the nature of the weapon and the type of ammunition," and that the nature of the weapon increased the likelihood of death or serious bodily injury. Philiposian argued that even though the weapon qualified as a high-capacity weapon due to its ability to hold more than ten cartridges, its high-capacity was negated by the fact that he only fired twice. The District Court rejected that argument and granted the Government's motion, stating:

> The gentleman did shoot at a moving figure with a particularly dangerous type of weapon and form of ammunition and . . . I find that the nature of the weapon did increase the likelihood of injury and indeed serious injury in the circumstances of this particular case particularly with regard to the shattering of the arm.
>
> So I am going to grant the Government's motion to depart upward under Section 5K2.17. And again we are supposed to depart upward based on the degree to which the nature of the weapon increased the likelihood of injury. . . . I think that a fair adjustment in this case would be an upward departure of two levels . . . .

4

The Government also requested an upward departure pursuant to U.S.S.G. SS 5K2.0 and 5K2.3 for aggravating circumstances and extreme psychological injury and the extraordinary effect the crime had on the victim. It argued that the upward departure was warranted because the Sentencing Guidelines do not address adequately the combination of physical, psychological, and emotional injuries suffered by Ms. Ebinger. However, Philiposian argued that the psychological injury was not extraordinary and that the pain suffered by Ms. Ebinger was already considered by the Sentencing Guidelines in S 2A2.2(b)(3)(C)'s six level enhancement for permanent or life-threatening bodily injury.

The District Court denied the departure based on extreme psychological injury under S 5K2.3, stating that anyone who is the victim of this kind of offense"would likely suffer psychological injuries resembling or approximating those suffered by this victim." Despite not being mentioned by either party, the District Court did depart upward two levels, pursuant to U.S.S.G. S 5K2.2, based on the extreme physical pain suffered by the victim. It found that the six level guideline enhancement for permanent or life-threatening injury was inadequate. The Court stated:

> . . . I am ruling that the six level adjustment applies in my opinion to every permanent injury including permanent injuries accompanied by no pain on its face, including permanent injuries that merely deprive someone of the use of a finger or permanent injury to the eardrum as a result of which a person has ringing in the ear or difficulty hearing in one of their ears.

> I am saying where you have horrific, extensive permanent injuries accompanied by serious and unremitting pain which also require extensive physical therapy, in and of itself extremely painful, that is a situation that I believe is above and beyond the typical case contemplated by the six level adjustment and warrants a further upward departure.

> . . .

5

> . . . I am departing upward two levels which I think
> fairly is the lowest number of levels I could depart. . .
> upward to capture the situation as I find it to be.

In light of the sentence enhancements, Philiposian's
offense level totaled twenty-three. The resulting guideline
range for the assault count became forty-six to fifty-seven
months. The District Court then imposed the fifty-four
month sentence on the assault charge followed by the
consecutive ten year term for the firearm charge. This
resulted in a total sentence of one hundred seventy-four
months imprisonment.

Philiposian now appeals the District Court's grant of
these two upward departures. We exercise our jurisdiction
pursuant to 28 U.S.C. S 1291, and apply an abuse of
discretion review. See Koon v. United States, 518 U.S. 81,
100 (1996); United States v. Jacobs, 167 F.3d 792, 798 (3d
Cir. 1999).

II.

The first argument advanced on appeal by Philiposian is
that the two-level upward departure for use of a high-
capacity semiautomatic weapon under U.S.S.G. S 5K2.17
was unjustified because only two shots were fired, and thus
the high-capacity nature of the weapon did not in this
particular case increase the likelihood of death or injury. In
essence, Philiposian argues that "[b]y its own terms, this
policy statement does not create an automatic upward
departure for any defendant who possesses a high-capacity,
semiautomatic firearm during a crime of violence or
controlled substance offense. Rather, an upward departure
is only warranted if in the circumstances of the particular
case, the `nature' of the firearm created a greater risk of
death or injury." Appellant's Brief at 19.

However, Philiposian reads S 5K2.17 far too narrowly.
That provision states:

> If the defendant possessed a high-capacity,
> semiautomatic firearm in connection with a crime of
> violence or controlled substance offense, an upward
> departure may be warranted. A "high-capacity,

semiautomatic firearm" means a semiautomatic firearm
that has a magazine capacity of more than ten
cartridges. The extent of any increase should depend
upon the degree to which the nature of the weapon
increased the likelihood of death or injury in the
circumstances of the particular case.

U.S.S.G. S 5K2.17.

As this Court has previously noted: "the plain and
unambiguous language of the Sentencing Guidelines
affords the best recourse for their proper interpretation."
United States v. Wong, 3 F.3d 667, 670 (3d Cir. 1993).
Thus, "an adjustment that clearly applies to the conduct of
an offense must be imposed unless the Guidelines exclude
its applicability." Id. at 671. Therefore, we find Philiposian's
argument that the high capacity nature of the weapon did
not increase the risk of injury to be flawed.

First, the District Court received testimony that the AK-
47, a high-capacity, semiautomatic weapon, significantly
increased the likelihood of death or injury. Among other
things, the increased velocity of the bullets fired from the
AK-47 would cause fragmenting and injuries to the bone
upon impact, as well as increase the bullets' accuracy and
the capacity for causing death or serious bodily injury. The
testimony also revealed that this type of rifle further
increased the accuracy of the shooter by increasing his view
of the target. This evidence alone belies Philiposian's claim
that the high-capacity, semiautomatic nature of the weapon
did not increase the likelihood of injury.

Moreover, Philiposian's argument that S 5K2.17 was
intended to apply solely to circumstances in which the
weapon was used to fire a significantly large number of
shots without reloading is contrary to the plain meaning of
that Guideline. Section 5K2.17 applies if the defendant
merely "possessed" a high-capacity, semiautomatic firearm.
Contrary to Philiposian's reading, there is no requirement
that the defendant "use" that firearm to its full capacity.
There is no requirement that the weapon even be fired.
Thus, we cannot accept the narrow reading of S 5K2.17
advanced by Philiposian because it restricts application to
those instances where multiple shots are fired or

7

threatened to be fired in rapid succession at multiple victims. Such a reading is clearly disproved by the plain meaning of the Guideline and its applicability to any defendant who merely possesses a high-capacity, semiautomatic weapon.

After finding that a defendant possessed a high-capacity, semiautomatic weapon, a district court must exercise its discretion in deciding the extent of the applicable upward departure. The amount of the increase depends on the degree to which the nature of the weapon increased the likelihood of death or injury. Contrary to Philiposian's argument, the District Court correctly exercised its discretion in deciding the extent of the departure by stating:

> And again we are supposed to depart upward based on the degree to which the nature of the weapon increased the likelihood of injury. I don't know how to measure it and I'm not going to pretend I do.
>
> I'm sure sound argument could be made [that] there should be a 15 level increase based on the facts that it's twice as likely to result in serious injury but I'm just not going to do that. I think that a fair adjustment in this case would be an upward departure of two levels and that is what I'm going to do.

Because it cannot be said that the District Court abused its discretion in granting the Government's motion for an upward departure pursuant to U.S.S.G. S 5K2.17, we affirm its imposition of a two-level upward departure.

III.

Second, Philiposian argues that the two-level upward departure under U.S.S.G. S 5K2.2, based on the nature of the injuries and pain, was unjustified because these factors were already taken into account by the upward adjustment under U.S.S.G. S 2A2.2(b)(3)(C), which added six levels for causing permanent or life-threatening bodily injury. He contends that the District Court erred in concluding that the injury and pain caused by the shooting fell outside the "heartland" of "permanent or life-threatening" injury under

8

S 2A2.2(b)(3)(C). Thus, Philiposian urges that the upward departure pursuant to U.S.S.G. S 5K2.2 for the extent of the injuries and extreme physical pain constituted impermissible double counting. We disagree and hold that the District Court did not abuse its discretion in applying this upward departure.

A district court has discretion to "impose a sentence outside the range established by the applicable guidelines, if the court finds `that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.' " U.S.S.G. S 5K2.0 (quoting 18 U.S.C. S 3553(b)). "Similarly, the [sentencing] court may depart from the guidelines even though the reason for departure is taken into consideration in determining the guideline range . . . if the court determines that, in light of unusual circumstances, the weight attached to that factor under the guidelines is inadequate or excessive." Id.

Here, the District Court determined that although the victim's injuries were somewhat accounted for in the six level enhancement under U.S.S.G. S 2A2.2(b)(3)(C), her "permanent injuries accompanied by serious and unremitting pain" were "above and beyond the typical case contemplated by the six-level adjustment and warrant[ed] further upward departure." In fact, the District Court ultimately rejected the same argument Philiposian advances on appeal -- that the six-level enhancement for permanent physical injury sufficiently addressed the victim's injuries:

> A relatively modest permanent injury gets you six levels, therefore, it might only be fair, logical and reasonable to depart upward so you get seven, eight or nine levels if it's extraordinary permanent injury. . . .
>
> . . .
>
> Any injury that is permanent would get you that six levels. . . . Now, this woman has suffered . . . far more significant and horrific physical injuries and we don't need to recount them. We all know what they are and it's uncontroverted what they are and in my opinion an

9

upward departure is justified when the injuries[,] whether they're serious for purposes of a four level enhancement or permanent for purposes of a six level enhancement[,] are sufficiently above and beyond the norm of what would be encompassed by the adjustment and I think they are in this case. . . . I am looking at the . . . nature and extent and extreme pain associated with the physical injuries to conclude that the six level adjustment which would normally encompass the heartland of permanent injuries is inadequate.

After deciding that an upward departure was appropriate, the District Court set the appropriate departure at two levels. It reasoned:

I am sure the victim could make a very convincing case that there should be a ten level upward departure by asking you to spend a day in her body but I am departing upward two levels[,] which I think fairly is the lowest number of levels I could depart . . . upward to capture the situation as I find it to be.

We are convinced that the reasoning employed by the District Court in granting the upward departure does not evidence an abuse of discretion, and affirm the District Court's decision to depart upward two levels pursuant to U.S.S.G. S 5K2.2.

IV.

Because the District Court did not abuse its discretion in applying the two sentence enhancements, we affirm its application of upward departures pursuant to U.S.S.G. SS 5K2.17 and 5K2.2.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

10