

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-9-2006

# USA v. Jimenez-Calderon

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3713

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"USA v. Jimenez-Calderon" (2006). *2006 Decisions.* Paper 923.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/923

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-3713
_____

UNITED STATES OF AMERICA

v.

ANTONIA JIMENEZ-CALDERON
a/k/a MIRIAM CORTEZ
a/k/a MIRIAM BARCIA
a/k/a BONIVACIO

Antonia Jimenez-Calderon,
Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
D.C. Crim. Action No. 02-cr-00553
(Honorable Faith S. Hochberg)

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
April 28, 2006

Before:  SCIRICA, *Chief Judge*, NYGAARD and ALARCÓN,[*] *Circuit Judges*

(Filed:  June 9, 2006)

_____

[*]The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

OPINION OF THE COURT

ALARCON, Circuit Judge.

Appellant Antonia Jimenez-Calderon ("Ms. Jimenez-Calderon") pled guilty to Conspiracy to Promote Sex Trafficking in violation of 18 U.S.C. § 371, and Promoting Sex Trafficking by Force in violation of 18 U.S.C. § 1591(a)(1), counts One and Fourteen of the Superceding Indictment. She appeals from the District Court's sentencing decision. She argues that the District Court failed to consider adequately all the factors listed in 18 U.S.C. § 3553(a) when fashioning her sentence, and that the District Court otherwise failed to explain the sentence adequately in violation of 18 U.S.C. § 3553(c). Ms. Jimenez-Calderon also argues that her sentence was calculated incorrectly under the United States Sentencing Guidelines. This Court has jurisdiction pursuant to 18 U.S.C. § 3742. We affirm.

**I**

On February 22, 2002, police raided a house of prostitution in Plainfield New Jersey. Four minors, young Mexican girls, were discovered and detained. Ms. Jimenez-Calderon and her sister Librada Jimenez-Calderon ("Librada") were arrested in the raid and released on bail. They obtained false birth certificates for the four girls and attempted to gain the girls' release. Ms. Jimenez-Calderon Antonia and Librada recruited Sergio

Farfan, a social worker at the Union County Jail and regular client of the house of prostitution, to deliver the fraudulent birth certificates to the Union County Juvenile Detention Center. Mr. Farfan delivered the documents to the Assistant Director of the Union County Juvenile Detention Center.

Angel Ruiz owned and operated the house of prostitution. Maritzana Lopez helped Mr. Ruiz, and visited the house almost daily to deliver beer and to collect proceeds from the sale of beer and acts of prostitution. In the fall of 2001, Mr. Ruiz and Ms. Lopez recruited Pedro Garcia Burgos to assist in operating the house of prostitution. Mr. Burgos lived at the house. The involvement of Ms. Jimenez-Calderon began when Mr. Burgos brought in Ms. Jimenez-Calderon and Librada to help him run the brothel.

Initially, the prostitutes working at the house were adults. However, in approximately November 2000, the Jimenez-Calderon sisters conspired with their brothers, Delfino and Luis Jimenez-Calderon ("Delfino and Luis"), to lure young girls from Mexico to work at the house. Delfino and Luis targeted girls from extremely impoverished families working in cafes in Mexico. Each of the girls worked far away from their families. They were young, naive, and had a low level of education. Some of the girls were illiterate. Delfino and Luis gave the girls gifts, pretended to be in love with them, and convinced them to go to the United States with them to get married and live a better life.

3

As part of their plan, Delfino and Luis asked the girls on a date after repeatedly visiting the girls at their place of work. They took the girls away from the towns where they lived and worked, and brought them to a motel, or house, where at least two girls were raped, and one consented to sexual intercourse. The girls were then taken to meet Delfino and Luis's mother. They introduced them as their future brides. The girls were then smuggled into the United States.

After the girls arrived at the brothel in New Jersey, they were handed over to Ms. Jimenez-Calderon and Librada and forced into prostitution. To help control the girls, Ms. Jimenez-Calderon and her siblings falsely represented that the girls were later to be married to Delfino and Luis. All of the money earned from prostitution at the house was turned over to Ms. Jimenez-Calderon. The girls were told that the money they earned would be given to their future husbands. They were told that Delfino and Luis were in Mexico. In reality, Delfino and Luis were in the United States. Ms. Jimenez-Calderon and Librada kept a portion of the money earned. The remainder was divided between Delfino and Luis, Mr. Ruiz, Ms. Lopez, and Mr. Burgos.

Eventually, one of the girls, "AHS," learned that two other girls were also purportedly engaged to Delfino. When Librada discovered that AHS had learned this fact, she hit AHS in the face with a closed fist. Another victim, "GCL," told INS agents that she still considered Luis to be her husband, that she still loved him, and that he had

4

recently bought her jewelry and clothes.

The girls were not allowed to be friendly or establish relationships with the customers, talk to each other, or make any phone calls. The girls were beaten if they broke the rules. On occasion, Ms. Jimenez-Calderon and Librada called Delfino or Luis to have them talk to the girls about their behavior. Delfino or Luis would yell at the girls and tell them to obey Ms. Jimenez-Calderon and Librada. They were given permission to hit the girls if they did not follow the rules.

The case is before this Court for a second time. On June 27, 2005, this Court remanded the instant case to the District Court for re-sentencing pursuant to *United States v. Booker*, 543 U.S. 220 (2005) without ruling on the propriety of the sentence. *United States v. Jimenez-Calderon*, 135 Fed. Appx. 562 (3d Cir. 2005). On July 19, 2005, the District Court sentenced Appellant again, ordering that "Antonia Jimenez-Calderon, is hereby imprisoned for a term of 210 months, of which 60 months will be on Count 1 and the remainder on Count 14. . . . served concurrently." Pursuant to 18 U.S.C. § 371, the maximum sentence is five years on Count I. Life imprisonment is the maximum sentence allowed on Count 14 under 18 U.S.C. § 1591(a)(1).

## II

### A

A criminal sentence is reviewed for reasonableness. *United States v. Booker,* 543

5

U.S. 220, 261 (2005). "[W]hile not bound to apply the Guidelines, [district courts] must consult those Guidelines and take them into account when sentencing." *United States v. Cooper*, 437 F.3d 324, 325 (3d Cir. 2006) (quoting *Booker*, 543 U.S. at 264). District courts must impose sentences that promote the "sentencing goals" listed in 18 U.S.C. § 3553(a). *Id.* Pursuant to § 3553(a), courts must consider the following factors when fashioning a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed–
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for–
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines.

18 U.S.C. § 3553(a).

The record must demonstrate the trial court gave meaningful consideration to the factors listed in § 3553(a). *Cooper*, 437 F.3d at 329 (citing *United States v. Williams*, 425

F.3d 478, 480 (7th Cir. 2005)).  A court does not have "to discuss and make findings as to each of the § 3553(a) factors." *Id.* at 329.  However, in the instant case, the judge made explicit findings as to each of the factors enunciated in § 3553(a).  App. Vol. II 292-94. The court discussed and analyzed each factor in light of the facts presented in the instant case.  *Id.* at 292-94.  The discussion of each factor evidences the court's meaningful consideration of the requirements set forth in § 3553(a).  It also satisfies the requirements of 18 U.S.C. § 3553(c).  Accordingly, we reject Ms. Jimenez-Calderon's challenge to her sentence under § 3553.

Ms. Jimenez-Calderon also maintains that the district court erred by imposing a sentence greater than necessary because it treated the Sentencing Guidelines as "presumptively appropriate" and "per se reasonable."  Appellant's Br. 12.  "The advisory guidelines range is itself one of the § 3553(a) factors, 18 U.S.C. § 3553(a)(4), and continues to play an integral part in sentencing decisions."  *Cooper*, 437 F.3d at 331 (citing *Booker*, 543 U.S. at 264).  Although the Sentencing Guidelines are discretionary, the district courts "must consult those Guidelines and take them into account when sentencing."  *Booker,* 543 U.S at 264.  There is nothing in the record to indicate that the court considered the Sentencing Guidelines to be presumptively appropriate or per se reasonable.  Before pronouncing sentence, the District Court stated: "I use my discretion to sentence based on 18 United States Code, Section 3553.  I have to consider all of the

7

factors listed in that section." In view of this comment, and the lack of any statement made by the District Court to support Ms. Jimenez-Calderon's argument, we reject Appellant's claim that the court considered the guidelines to be presumptively appropriate. While there is no question the District Court consulted the guidelines as required, *Booker,* 543 U.S. at 264, the Court also made it clear that it exercised its discretion in fashioning the sentence.

## B

Ms. Jimenez-Calderon argues that the District Court engaged in double counting when it applied § 2G1.1(b)(4)(B) because "the evils addressed by § 2G1.1(b)(4)(B) respond to the same evils of inducement or coercion already found in subsection § 2G1.1(b)(1)(A) and (B)[.]" Appellant's Br. 20. "We review the District Court's interpretation of the Sentencing Guidelines *de novo*." *United States v. Pojilenko*, 416 F.3d 243, 246 (3d Cir. 2005) (quoting *United States v. Mobley*, 956 F.2d 450, 451 (3 Cir. 1992)).

The relevant version of § 2G1.1(b)(1) applicable at the time of sentencing[1] provided for a 4-level increase if "the offense involved (A) a commercial sex act; and (B) the use of physical force, fraud, or coercion." Section 2G1.1(b)(4)(B) provides an additional 2-level increase if "a participant otherwise unduly influenced a minor to

---

[1] U.S.S.G § 2G1.1 was amended effective November 1, 2004.

engage in a commercial sex act." The gravamen of Ms. Jimenez-Calderon's argument is that she should not have been sentenced for unduly influencing a minor to engage in a commercial sex act pursuant to subsection (b)(4)(B) because "the use of physical force, fraud, or coercion" takes any undue influence into account.

"The Sentencing Commission's awareness of potential double counting issues is clearly reflected in other Guidelines provisions." *United States v. Wong*, 3 F.3d 667, 670 (3d Cir. 1993) (holding that enhancements for more than minimal planning and for being an organizer or leader were appropriately applied in tandem). In *Wong*, this Court stated that "only when the Guidelines *explicitly* prohibit double counting will it be impermissible to raise a defendant's offense level under one provision when another offense Guideline already takes into account the same conduct." *Id.* at 671. "The offense level adjustments from more than one specific offense characteristic within an offense guideline are applied cumulatively (added together) unless the guideline specifies that only the greater (or greatest) is to be used." U.S.S.G. § 1B1.1 cmt. n.4. Because the adjustments listed under U.S.S.G. § 2G1.1 are graduated, cumulative, and there is no explicit prohibition of double counting, the District Court correctly added 4 levels pursuant to § 2G1.1(b)(1) in addition to a two-level increase under § 2G1.1(b)(4)(B).

Ms. Jimenez-Calderon's reliance on *United States v. Fenton*, 309 F.3d 825 (3d Cir. 2002) is misplaced. The question presented in *Fenton* was whether a state law crime,

9

identical and conterminous with a federal crime, can be considered 'another felony offense' within the meaning of the Sentencing Guidelines. *Id.* at 826. *Fenton* is inapposite because the enhancement at issue in the instant case was not applied for an additional state law crime. In *United States v. Lloyd*, 361 F.3d 197 (3d Cir. 2004) this Court explained that the holding in *Fenton* applies only to cases "where a defendant is convicted for possession of firearms resulting from a theft of those same firearms." *Lloyd*, 361 F.3d at 202.

Similarly, the District Court did not engage in impermissible double counting when it applied an enhancement to the base level offense calculation pursuant to § 2G1.1(b)(4)(B). Ms. Jimenez-Calderon was convicted of "[s]ex trafficking of children *or* by force, fraud, or coercion." 18 U.S.C. § 1591 (emphasis added). Section 1591 does not solely address the trafficking of minors. It prohibits the trafficking of any person, adult or minor, if force, fraud, or coercion is used to cause that person to engage in a commercial sex act. 18 U.S.C. § 1591. A base offense level of 19 applies "if the offense involved a minor." U.S.S.G. § 2G1.1(a)(1). If the victims in the instant case had been adults, the base level for the offense would have been 14. U.S.S.G. § 2G1.1(a)(2). The District Court applied a two-level enhancement pursuant to § 2G1.1(b)(4)(B) for unduly influencing a minor to engage in a commercial sex act. There was no double counting because there is no explicit prohibition in the Sentencing Guidelines preventing the

10

cumulative application of the provisions listed under § 2G1.1. *Wong*, 3 F.3d at 671.

## C

Ms. Jimenez-Calderon claims that there is "an absence of any factors that rendered the instant victims unusually vulnerable for victims of this offense." Appellant's Br. 28. Citing *United States v. Zats*, 298 F.3d 182, 186 (3d Cir. 2002), she maintains that the victims must be particularly vulnerable, and not just vulnerable in the conventional sense of the word. In accordance with § 3A1.1 the vulnerable victim enhancement may be applied where:

> (1) the victim was particularly susceptible or vulnerable to the criminal conduct; (2) the defendant knew or should have known of this susceptibility or vulnerability; and (3) this vulnerability or susceptibility facilitated the defendant's crime in some manner; that is, there was 'a nexus between the victim's vulnerability and the crime's ultimate success.'

*United States v. Iannone*, 184 F.3d 214, 220 (3d Cir. 1999) (quoting *United States v. Monostra*, 125 F.3d 183, 190 (3d Cir. 1997)).

We reject Ms. Jimenez-Calderon's suggestion that the victims were not particularly vulnerable. It is difficult to imagine a group of victims more vulnerable than the girls preyed upon in this scheme. Delfino and Luis targeted the girls precisely because they were particularly vulnerable, satisfying the first and second factor enunciated in *Iannone*. *See id*. at 220. These girls were young, uneducated, naive and

11

from extremely impoverished families. Delfino and Luis convinced these girls to go to the United States with them to get married and live a better life. They maintained that ruse until the house of prostitution was raided by police. Some of the girls were raped, and they were all humiliated. There is no question that there was a nexus between the victims' vulnerability and the ultimate success of the crime. Accordingly, the enhancement was properly applied by the District Court.

## D

Ms. Jimenez-Calderon argues that the District Court erred in applying a four-level enhancement pursuant to U.S.S.G. § 3B1.1(a) because she organized fewer than five co-conspirators. Section 3B1.1(a) provides: "If the defendant was an organizer or leader of a criminal activity that involved five or more participants *or was otherwise extensive*, increase by 4 levels." U.S.S.G. § 3B1.1(a) (emphasis added). In *United States v. Katora*, 981 F.2d 1398, 1402 (3d Cir. 1992), this Court held that a "a district court must find that the defendant exercised control over at least one other person" to apply an enhancement pursuant to § 3B1.1(c).[2] The district court erred in *Katora* because § 3B1.1 cannot

---

[2]Section 3B1.1(c) does not require five or more participants. In its entirety, section 3B1.1 provides:

> Based on the defendant's role in the offense, increase the offense level as follows:
> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase

(continued...)

12

"enhance the sentences of a duo when they bear equal responsibility for 'organizing' their own commission of a crime." *Id.* at 1403. Relying on *Katora,* Ms. Jimenez-Calderon contends that the District Court erred in the instant case by counting her sister and other co-conspirators among those she supervised. *Katora* is inapposite because it applies to § 3B1.1(c), not § 3B1.1(a), and the two defendants in *Katora* were the only culpable participants in the crime. *Katora*, 981 F.2d at 1399.

*United States v. Fuentes*, 954 F.2d 151 (3d Cir. 1992) is similarly distinguishable because the defendant in that matter did not supervise any other individual. *Id.* at 153. The instant case is closer to the situation described in *United States v. Ortiz*, 878 F.2d 125, 127 (3d Cir. 1989). In *Ortiz*, the defendant was subordinate to another individual but qualified as a leader because he acted as a principal in an illicit transaction, recruited two members of the conspiracy and directed the actions of some other conspirators. *Id.* at 127; *see also United States v. Bass*, 54 F.3d 125, 129 (3d Cir. 1995) (holding "[a] person

[2](...continued)
 by 4 levels.
 (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
 (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.
U.S.S.G. § 3B1.1.

13

who plans, funds, and supervises a conspiracy's operation does not immunize himself from upward adjustment under § 3B1.1 just because he does not join in all of the mechanics and all of the various activities of the illegal enterprise.").

The plain language of § 3B1.1(a) states that 4-level enhancement applies to "an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). While Ms. Jimenez-Calderon did not supervise all of her co-conspirators, the criminal activity involved more than five participants and it was extensive. Application Note 4 to § 3B1.1 instructs the court to consider the recruitment of accomplices in determining whether an individual is a leader. Ms. Jimenez-Calderon enlisted her two brothers to procure the victims. She recruited Mr. Farfan to assist in the obstruction of justice after the house was raided. Mr. Burgos helped Ms. Jimenez-Calderon to enforce the rules and collect money. If he caught one of the victims breaking the rules, Mr. Burgos would bring her to Ms. Jimenez-Calderon and Librada to be reprimanded. She ran the brothel along with her sister, Librada, a fifth person. However her sister shared equal culpability. There were two other people involved in the conspiracy. Mr. Ruiz owned and operated several houses of prostitution, including the one at issue in the instant case, and he was aided in that enterprise by Ms. Lopez.

Ms. Jimenez-Calderon also collected money earned from the activity, and

14

distributed the proceeds to her co-conspirators. *See* U.S.S.G § 3B1.1 cmt. n.3 (stating that "[a]n upward departure may be warranted, . . . in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.").

In sum, Ms. Jimenez-Calderon supervised four people–her brothers, Delfino and Luis, Mr. Farfan, and Mr. Burgos–while participating in a larger conspiracy with her sister, Librada, and others. Accordingly, she was a leader of a criminal activity that involved more than five people. In view of these facts, the District Court did not err in imposing a four-point enhancement pursuant to § 3B1.1(a).

For the foregoing reasons, we will affirm the judgment of the District Court.