

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-17-2000

# United States v. Miller

Precedential or Non-Precedential:

Docket 00-5052

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"United States v. Miller" (2000). *2000 Decisions.* Paper 168.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/168

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 17, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-5052

UNITED STATES OF AMERICA

v.

JONATHAN MILLER a/k/a "Wacky Jack"

      Jonathan Miller,
      Appellant

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 98-cr-00009)
District Judge: Honorable Mary Little Cooper

Argued: Tuesday, June 27, 2000

Before: ROTH, GARTH, Circuit Judges
and STANTON, District Judge*

(Filed: August 17, 2000)

      Robert J. Haney (Argued)
      224 West State Street
      Trenton, NJ 08608

Attorney for Appellant

_____

* Honorable Louis L. Stanton, United States District Judge for the
Southern District of New York, sitting by designation.

Robert J. Cleary
United States Attorney
970 Broad Street
Newark, NJ 07102

Gerard M. McCabe (Argued)
Assistant United States Attorney
United States Post Office and
Courthouse
401 Market Street
Camden, NJ 08101

Attorneys for Appellee

OPINION OF THE COURT

GARTH, Circuit Judge:

In this appeal, we are asked to consider whether an individual convicted of an unlawful sale of firearms is entitled to an offense level reduction pursuant to the "sporting purposes" provision of the United States Sentencing Guidelines. See U.S.S.G. S 2K2.1(b)(2).

Jonathan Miller ("Miller") pled guilty in the District Court to one count of selling firearms without a license, in violation of 18 U.S.C. S 922(a)(1)(A). At sentencing, Miller argued that because he had possessed the firearms at issue for "sporting purposes"–– until he chose to sell them unlawfully –– he was entitled to an offense level reduction to offense level six. If Miller received such a reduction, he would be subject to between zero and six months of incarceration under the Guidelines. The District Court rejected Miller's argument, and we will affirm, albeit for reasons different than those provided by the District Court.1

_____

1. We may affirm a District Court's judgment on grounds other than those considered by the District Court itself. See, e.g., PAAC v. Rizzo, 502 F.2d 306, 308 n.1 (3d Cir. 1974) ("It is proper for an appellate court to affirm a correct decision of a lower court even when that decision is based on an inappropriate ground.").

2

I

On January 9, 1998, a federal grand jury returned a five-count indictment against Miller, generally charging him with violations of federal firearms law. In particular, the indictment charged that on February 6, 1997, Miller had sold both an Israel Military Industries Desert Eagle model .44 magnum semi-automatic handgun and a Ruger GP100 model .357 magnum revolver, along with ammunition consisting of four magazines of hollow point bullets to an undercover agent of the Drug Enforcement Agency in New Jersey. On February 21, 1997, Miller sold, to the same undercover agent -- this time in Pennsylvania-- a German Luger-style handgun possessing nine millimeter and .30 caliber barrels. Finally, on September 26, 1997, Miller sold a fourth firearm -- a Thompson target/hunting pistol with .45, .410, and .223 caliber barrels -- to the same agent in New Jersey. The indictment specifically charged Miller with the sale of firearms without a license, in violation of 18 U.S.C. S 922(a)(1)(A), transportation of a firearm in interstate commerce, in violation of 18 U.S.C. S 922(g), and possession of ammunition, also in violation of 18 U.S.C. S 922(g).2

Federal authorities arrested Miller on April 1, 1999. Pursuant to a plea agreement executed by both Miller and the government on July 22, 1999, in exchange for the dismissal of the remaining four counts of the indictment, on August 19, 1999, Miller pled guilty to count one of the indictment, which charged him with selling firearms without a license.

The District Court sentenced Miller on December 13, 1999. Because Miller had been convicted of an offense

_____

2. Both the transportation and possession charges stem from the fact that Miller had "been convicted in a[ ] court of[ ] a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. S 922(g)(1). Miller's presentence report indicates that he had been arrested in 1983 on state theft charges in Pennsylvania. PSR P 29. In 1983, "theft by unlawful taking" was a felony of the third degree under Pennsylvania law if the article stolen was valued at over $2000. See 18 Pa. Cons. Stat. Ann. S 3903(a) (1983). A felony of the third degree is punishable by a maximum of seven years imprisonment. See id.S 106(b)(4).

concerning a "prohibited transaction involvingfirearms," the court was required to sentence Miller in accordance with section 2K2.1 of the United States Sentencing Guidelines. Miller's previous felony conviction required that he be classified as a "prohibited person" under section 2K2.1,3 and the District Court thereupon set his base offense level at fourteen. See U.S.S.G. S 2K2.1(a)(6).4 The fact that Miller had sold four different weapons subjected him to a one-level increase to fifteen, see id. S 2K2.1(b)(1), or nine levels above that provided by section 2K2.1(b)(2).

Miller argued that he was entitled to a reduction to level six pursuant to section 2K2.1(b)(2) of the Guidelines because each of the weapons involved in his offense were possessed "solely for sporting purposes or collection." The District Court rejected Miller's argument, holding that because Miller had sold the firearms at issue in violation of federal law, he had engaged in an "unlawful use" of the firearms, and was therefore barred from receiving the "sporting purposes" reduction. At Miller's sentencing hearing, the District Court stated, in relevant part, as follows:

> I believe that there is an unclear issue here of law. . . and I am sufficiently persuaded that this is a question of first impression, if you will, in this Circuit at least, that I will simply make a ruling based upon my legal

_____

3. Application note six to section 2K2.1 defines "prohibited person" as, inter alia, "anyone who . . . is under indictment for, or has been convicted of, a `crime punishable by imprisonment for more than one year,' as defined by 18 U.S.C. S 921(a)(20)." U.S.S.G. S 2K2.1 application note 6. In pertinent part, 18 U.S.C. S 921(a)(20) provides that "[w]hat constitutes a conviction of such a crime shall be determined in accordance with the law of the jurisdiction in which the proceedings were held." As stated earlier, see supra n.2, Pennsylvania law requires that a "felony of the third degree" be punishable by a maximum of seven years of incarceration. Miller, who, as we have noted, had been previously convicted in Pennsylvania for "theft by unlawful taking," is therefore deemed a "prohibited person."

4. Section 2K2.1(a)(6) provides a base offense level of fourteen "if the defendant (A) is a prohibited person; or (B) is convicted under 18 U.S.C. S 921(a)(30)." U.S.S.G. S 2K2.1(a)(6).

4

interpretation and allow the parties to take their contentions on appeal.

I hold that the unambiguous language of Section 2K2.1(b)(2) indicates that the scope of this Court's inquiry should be limited to cases in which possession has occurred and the defendant did not "unlawfully discharge or otherwise unlawfully use" the firearm. Here, where the defendant's offense was that he sold the firearms in an unlawful transaction, I hold that that conduct is covered under the term "unlawfully use" as found in this subsection, and therefore, that he is not eligible for the six level offense which is afforded for those who strictly use all ammunition and firearms solely for lawful sporting purposes or collection.

Sentencing Transcript, at 20-22. The District Court thus essentially held that a reduction pursuant to section 2K2.1(b)(2) to level six was unavailable, as a matter of law, to defendants convicted of firearm trafficking offenses.5

After allowing a two-level reduction for acceptance of responsibility, Miller's sentencing range pursuant to the Guidelines was between twelve and eighteen months of imprisonment, and the District Court sentenced him to a prison term of twelve months and one day. Anticipating that Miller planned to appeal its determination concerning his application for a section 2K2.1(b)(2) reduction, and that our disposition on appeal would likely be rendered subsequent to Miller's release, the District Court stayed Miller's sentence on December 22, 1999.

II

The District Court possessed subject matter jurisdiction

_____

5. We note that the District Court, as a result of its holding, did not render any factual finding concerning the reason for which Miller initially
possessed the firearms; that is, before he engaged in the illegal sale for which he was convicted. Sentencing Transcript, at 23 ("If such an inquiry needs to be made, this Court is equipped to do it, but I don't think it is, and so my ruling is that this section does not apply in the circumstances of this case . . . as applied to the charge in this case." (emphasis added)).

5

over this matter pursuant to 18 U.S.C. S 3231. Because Miller appeals from the District Court's final judgment of conviction and sentence, and raises an issue concerning the District Court's calculation of his sentence, our appellate jurisdiction is grounded in both the final order doctrine of 28 U.S.C. 1291 and 18 U.S.C. S 3742(a). As Miller argues that the District Court erred in its construction of the Sentencing Guidelines, our review is plenary. See, e.g., United States v. Torres, 209 F.3d 308, 311 (3d Cir. 2000).

III

As its title, "Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition: Prohibited Transactions Involving Firearms or Ammunition," suggests, the Sentencing Commission intended section 2K2.1 of the Sentencing Guidelines generally to govern the sentencing of defendants convicted of any number of firearms offenses. In addition to listing the base offense levels for the various firearms offenses, section 2K2.1 also provides "specific offense characteristics"; that is, circumstances particular to a given defendant's actual conduct that, if established, would either increase or decrease a particular defendant's offense level. One such provision is the focus of the instant appeal, section 2K2.1(b)(2), which is colloquially known as the "sporting purposes reduction." See Thomas W. Hutchinson, et al., Federal Sentencing Law and Practice 621 (2000). In full, section 2K2.1(b)(2) reads as follows:

> If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

U.S.S.G. S 2K2.1(b)(2) (emphasis added).

The terms of section 2K2.1(b)(2) call for the establishment of three requirements in order to warrant an offense level reduction: (1) that the defendant is not subject to

6

subsections 2K2.1(a)(1)-(5);6 (2) that the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection"; and (3) that the defendant "did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition." The defendant must establish each of these elements by a preponderance of the evidence. See, e.g., United States v. Dudley, 62 F.3d 1275, 1276 (10th Cir. 1995); United States v. Gonzales , 12 F.3d 298, 301 (1st Cir. 1993).

As stated earlier, the District Court recognized that Miller had satisfied the first requirement, in that he was not subject to subsections 2K2.1(a)(1)-(a)(5). The District Court then assumed that Miller could satisfy his burden with respect to the second requirement, yet held that because Miller had illegally sold the firearms at issue, he had "unlawfully used" the firearms, and therefore could not meet his burden with respect to the third requirement. Our

_____

6. In full, sections 2K2.1(a)(1)-(a)(5) provide as follows:

(a) Base Offense Level (Apply the Greatest):

    (1) 26, if the offense involved a firearm described in 26 U.S.C.
    S 5845(a) [definitions of particularfirearms] or 18 U.S.C. S 921(a)(30)
    [definition of "semiautomatic assault weapon"], and the defendant
    had at least two prior felony convictions of either a crime of violence
    or a controlled substance offense; or

    (2) 24, if the defendant had at least two prior felony convictions of
    either a crime of violence or a controlled substance offense; or

    (3) 22, if the offense involved a firearm described in 26 U.S.C.
    S 5845(a) or 18 U.S.C. S 921(a)(30), and the defendant had one prior
    felony conviction of either a crime of violence or controlled
    substance offense; or

    (4) 20, if --

    (A) the defendant had one prior felony conviction of either a crime
    of violence or a controlled substance offense; or

    (B) the offense involved a firearm described in 26 U.S.C. S 5845(a)
    or 18 U.S.C. S 921(a)(30); and the defendant (i) is a prohibited
    person; or (ii) is convicted under 18 U.S.C. S 922(d); or

    (5) 18, if the offense involved a firearm described in 26 U.S.C.

S 5845(a) or 18 U.S.C. S 921(a)(3) . . ..

7

analysis, however, differs from that of the District Court inasmuch as we hold that Miller did not satisfy the second requirement of the guideline; because Miller sold the firearms, he did not possess them "solely for a lawful sporting purposes or collection."

A

The government concedes that Miller was not subject to subsections (a)(1)-(a)(5) of section 2K2.1(b)(2). Instead, Miller is a "prohibited person" by virtue of his 1983 Pennsylvania conviction. Accordingly, Miller was properly assigned a base offense level of fourteen pursuant to section 2K2.1(a)(6), which the District Court increased to fifteen as a result of Miller's multi-firearm transaction.

B

As stated above, the second requirement of a claim for a section 2K2.1(b)(2) reduction mandates that the defendant establish that he "possessed all ammunition andfirearms [at issue] for lawful sporting purposes or collection." We held in United States v. Wong, 3 F.3d 667 (3d Cir. 1993), that "the plain and unambiguous language of the Sentencing Guidelines affords the best recourse for their proper interpretation." Id. at 670; see also 2A Norman J. Singer, Statutes and Statutory ConstructionS 46.01, at 53 (West Supp. 1999). In our view, the plain language of section 2K2.1(b)(2) excludes trafficking offenses from the offense level reduction provided by the provision.

As an initial matter, we note that section 2K2.1(b)(2) stipulates that the firearms in question must have been "possessed . . . solely for lawful sporting purposes or collection." U.S.S.G. S 2K2.1(b)(2) (emphasis added). More importantly, the relevant Guidelines provision does not use the terms "traffic," "sell," or "transfer" to describe conduct connected with a sporting or collective purpose that would entitle a particular defendant to an offense level reduction.

The Commission did use such language, however, in other subsections to section 2K2.1, thereby emphasizing the omission of these terms in the "sporting purposes"

8

guideline. For example, section 2K2.1(b)(5) generally provides a four level increase to a defendant's base offense level

> [i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense.

Id. S 2K2.1(b)(5) (emphasis added). The fact that the Sentencing Commission included language within certain provisions of section 2K2.1 that would clearly include trafficking, sale, or transfer offenses, but chose not to include such language within the terms of section 2K2.1(b)(2), is sufficient to conclude that the Commission did not intend for section 2K2.1(b)(2) to apply to those defendants convicted of trafficking, sale, or transfer offenses. See Russello v. United States, 464 U.S. 16, 23 (1983) (" `[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972) (per curiam))); see also United States v. Tham, 118 F.3d 1501, 1506 (11th Cir. 1997) (applying the principle established in Russello to a construction of the Sentencing Guidelines); United States v. Olivares, 905 F.2d 623, 629-30 (2d Cir. 1990) (per curiam) (same).

As stated earlier, the District Court convicted Miller of selling firearms without a license. Because the specific characteristics of Miller's offense therefore establish that Miller did not merely possess the firearms in question, but rather sold them, the plain meaning of the Sentencing Guidelines bars Miller from obtaining an offense level reduction pursuant to section 2K2.1(b)(2). Miller's brief, however, raises a number of arguments, to which we now turn.7

_____

7. Although Miller does not specify the arguments discussed in Section IV of this opinion in his "Statement of the Issues," we have gleaned from the discussion in his brief that he relies upon the arguments we catalog in Section IV.

IV

A

Miller first argues that the Commission intended the word "possessed" in section 2K2.1(b)(2) to refer to a defendant's use of the firearms in question only up until the date of the conduct giving rise to his conviction-- in this case, the sale of the firearms. In other words, Miller asserts that he is entitled to a reduction pursuant to section 2K2.1(b)(2) if he had possessed the firearms in question for lawful sporting purposes up until the date he illegally sold the same. Initially, we note that the plain language of section 2K2.1(b)(2) does not in any way limit its provisions in a temporal fashion. Even if we were to harbor doubt concerning Miller's argument, however, application note 10 to section 2K2.1, referring to section 2K2.1(b)(2), provided by the Sentencing Commission itself, states that

> [u]nder subsection(b)(2), "lawful sporting purposes or collection" as determined by the surrounding circumstances, provides for a reduction to an offense level of 6. Relevant surrounding circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstances of possession and actual use, the nature of the defendant's criminal history . . . and the extent to which possession was restricted by local law.

Id. S 2K2.1 application note 10 (emphasis added).8 In our view, by authorizing the courts to inquire into the"actual use" to which the defendant put the firearms in question,

_____

8. Analogizing the commentary in the Guidelines (e.g., the application notes) to "legislative rules," the Supreme Court has held that "provided an agency's interpretation of its own regulations does not violate the Constitution or a federal statute, it must be given`controlling weight unless it is plainly erroneous or inconsistent with the regulation.' " Stinson v. United States, 508 U.S. 36, 45 (quoting Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 414 (1945)); see also U.S.S.G. S 1B1.7 ("Failure to follow such commentary could constitute an incorrect application of the guidelines, subjecting the sentence to possible reversal
on appeal."). As such, we are bound by any interpretive guidance provided by the Sentencing Commission through the application notes.

the Sentencing Commission has evinced its intent to extend the relevant inquiry (i.e., whether the defendant possessed all firearms for lawful sporting purposes) to the conduct giving rise to the instant conviction -- here, the unlawful sale. Each of our sister circuits to have considered the issue have so held. See, e.g., United States v. Gresso, 24 F.3d 879, 881 (7th Cir. 1994) ("The other circuits are in accord: not only must a firearm be of a type that would be acquired for sporting uses or for collection, but it must also be possessed or used solely for those purposes."); United States v. Shell, 972 F.2d 548, 553 (5th Cir. 1992) ("[I]s is not sufficient that one among several intended uses might be lawful recreation or collection; one of those must be the sole intended use."); United States v. Smeathers, 884 F.2d 363, 364 (8th Cir. 1989) (per curiam) ("In our view, the commentary makes clear that application of the reduction depends on both intended and actual use.").9

B

Miller next argues that an interpretation preventing all defendants convicted of the unlawful sale of firearms from receiving an offense level reduction pursuant to section 2K2.1(b)(2) would nullify the application of this provision to those defendants, like Miller, whose initial offense level was provided by section 2K2.1(a)(6). The District Court set Miller's initial offense level, pursuant to section 2K2.1(a)(6), at fourteen because he was a "prohibited person"; that is, an individual who, inter alia, "has been convicted of[ ] a

_____

9. Indeed, the Eighth Circuit has confronted and rejected virtually the same argument that Miller makes in the present matter. In United States v. Smeathers, 884 F.2d 363 (8th Cir. 1989), the defendant (a previously-convicted felon) had purchased a rifle for hunting purposes, but was convicted of unlawful possession after he fired the gun in his home during an argument with his wife. See id. at 364. Like Miller, the defendant argued that he was entitled to a section 2K2.1(b)(2) reduction because he had possessed the rifle for sporting purposes up until the moment of the conduct that led to his conviction. The Eighth Circuit, however, rejected the defendant's argument, holding that the conduct that led to the underlying conviction was relevant to the district court's determination as to whether the defendant possessed the firearm in question solely for sporting purposes. See id. at 364-65.

11

`crime punishable by imprisonment for more than one year,'
as defined by 18 U.S.C. S 921(a)(20)." U.S.S.G. S 2K2.1
application note 6; see also supra nn. 3-4. As we stated
earlier, Miller is not automatically disqualified from
receiving a section 2K2.1(b)(2) reduction as a result of being
sentenced pursuant to section 2K2.1(a)(6). Rather, as an
individual whose base offense level was determined under
section 2K2.1(a)(6), he is eligible for a section 2K2.1(b)(2)
reduction if he meets that section's requirements.

Our holding that section 2K2.1(b)(2) does not extend to
those defendants convicted of trafficking offenses, however,
does not render the provision a nullity; to the contrary,
defendants who are considered "prohibited persons" under
section 2K2.1(a)(6) could have been defendants who have
been convicted for the illegal possession of a firearm.10 As
such, certain defendants who are classified as"prohibited
persons" are eligible for a reduction pursuant to section
2K2.1(b)(2). It is therefore not inconsistent to allow those
defendants whose initial offense levels were obtained
through section 2K2.1(a)(6) to be eligible for a section
2K2.1(b)(2) reduction, but then to limit such a reduction to
only those defendants convicted of illegally possessing a
firearm, when such a firearm has solely been used for
sporting purposes or collection.

C

Miller also argues that the history surrounding the
present-day version of section 2K2.1 evinces an intent to
allow defendants convicted of trafficking offenses to benefit
from the reduction provided by section 2K2.1(b)(2). Prior to
November 1, 1991, what is presently section 2K2.1 was
actually three separate guidelines; to wit, sections 2K2.1,
2K2.2 (now deleted), and 2K2.3 (now deleted). Each of the
three sections separately and respectively dealt with the
sentencing of defendants convicted of possession offenses,
trafficking offenses, and transportation offenses with intent

_____

10. Federal statute renders it a crime for an individual "who has been
convicted in any court of, a crime punishable by imprisonment for a
term exceeding one year" to possess a firearm. 18 U.S.C. S 922(g)(1).

12

or knowledge that the firearms would be used in future crimes.

The "sporting purposes reduction" (former section 2K2.1(b)(1)) was exclusively located within the guideline concerning possession offenses, and there was no comparable provision within either sections 2K2.2 (trafficking) or 2K2.3 (transportation). In 1991, however, the Sentencing Commission consolidated all three sections into one, the present-day section 2K2.1. Miller argues that this consolidation manifests an intent on the part of the Sentencing Commission to allow any defendant convicted of a firearms offense to obtain an offense level reduction pursuant to section 2K2.1(b)(2), even when the defendant fails to meet the requirements of the possessory"sporting purposes" reduction of section 2K2.1(b)(2).

The mere consolidation of all firearms offenses into a single guideline, without more, however, is insufficient to contradict the plain meaning of section 2K2.1(b)(2). Indeed, the Sentencing Commission, if it desired, could have provided that upon consolidation, the "sporting purposes" reduction applied to all firearms offenses, including sale, transfer, or trafficking. It did not do so.

D

Miller's final argument centers around application note 8 to section 2K2.1. In full, application note 8 states as follows:

> Subsection (a)(7) includes the interstate transportation or interstate distribution of firearms, which is frequently committed in violation of state, local, or other federal law restricting the possession offirearms, or for some other underlying unlawful purpose. In the unusual case in which it is established that neither avoidance of state, local, or other federal firearms law, nor any other underlying unlawful purpose was involved, a reduction in the base offense level to no lower than level 6 may be warranted to reflect the less serious nature of the violation.

Id. S 2K2.1 application note 8. Miller essentially argues that because section 2K2.1(b)(2) does not specifically disqualify

13

defendants whose initial offense level is obtained pursuant to section 2K2.1(a)(7), and application note 8 specifically indicates that a district court may reduce the offense level of a defendant convicted of a trafficking offense to level six, the Sentencing Commission intended for all such defendants to receive the benefit of a section 2K2.1(b)(2) reduction.

We disagree. As an initial matter, application note 8 tellingly lacks any reference whatsoever to section 2K2.1(b)(2). Moreover, application note 8 does not specify that a defendant must prove that the firearms possessed were solely for "lawful sporting purposes or collection," as required by section 2K2.1(b)(2). Hence, application note 8 has no relationship to the "sporting purposes" reduction of section 2K2.1(b)(2). Inasmuch as the sole issue before us is whether Miller is entitled to a reduction to offense level six pursuant to the "sporting purposes" provision of section 2K2.1(b)(2), and not whether Miller is entitled to a reduction to offense level six provided for other purposes in some other section of the Sentencing Guidelines, we reject Miller's argument. Indeed, our review of the record indicates that Miller failed even to mention application note 8 to the District Court, let alone seek an offense level reduction pursuant to its terms. Because we believe that the reduction to which application note 8 refers does not concern the specific characteristics of Miller's offense and has no connection with the with the specific reduction provided by section 2K2.1(b)(2) for firearms possessed solely for lawful sporting purposes or collection, Miller's argument fails.

E

Because Miller cannot establish that he possessed the firearms at issue in the instant matter "solely for lawful sporting purposes," we need not entertain nor address the argument concerning whether Miller's unauthorized sale of the firearms constituted an "unlawful use"-- the third requirement of a claim for a section 2K2.1(b)(2) reduction.

14

V

For the foregoing reasons, we will affirm the District Court's order of December 15, 1999, sentencing Miller to a term of incarceration spanning twelve months and one day.[11]

_____

11. The District Court, in its December 22, 1999 order, among other things, provided for Miller's surrender to the custody of the United States
Marshal for the District of New Jersey in the event that the judgment Miller appealed was affirmed. In light of our affirmance, we assume that the stay of sentence imposed by the District Court will be discharged and the sentence carried out.United States v. Miller, No. 00-5052.

15

Stanton, J., dissenting:

Standing alone, S 2K2.1(b)(2) could be read (as the majority does) not to apply to unlawful sales, but only to unlawful possession.

But subsection (b)(2) does not stand alone. It must be read in connection with Application Note 8.

Reading both together is not only natural; as the Government urges, it is a necessity. Quite correctly, the Government points out that "the base offense level reduction to level 6 referred to in Application Note 8 can only be understood to mean the reduction to level 6 provided by S 2K2.1(b)(2)." Appellee's br. 12, n. 9. As the Government explains, "Otherwise, Application Note 8 would be meaningless because there is no other operative base level reduction provision within the rubric of S 2K2.1." Id.

Integrally, Application Note 8 ties subsection (b)(2)'s reduction to sales, even though it may be unusual that a particular sale will qualify:

> Subsection (a)(7) includes the interstate transportation or interstate distribution of firearms, which is frequently committed in violation of state, local, or other federal law restricting the possession offirearms, or from some other underlying unlawful purpose. In the unusual case in which it is established that neither avoidance of state, local, or other federal firearms law, nor any other underlying unlawful purpose was involved, a reduction in the base offense level to no lower than level 6 may be warranted to reflect the less serious nature of the violation.

U.S.S.G. S 2K2.1, Commentary, Application Note 8.

Thus, subsection (b)(2)'s sentence reduction, and Application Note 8's application of it to sales, are harmonious rather than in conflict.

The question whether the sale is a "use" which bars the reduction in subsection (b)(2) will be decided by whether the sale satisfied Note 8's requirements, and the seller's pre-sale possession complied with (b)(2).

16

The case should be remanded for determination whether Mr. Miller's pre-sale possession was of the peaceable character required by subsection (b)(2), and whether his sales met the requirements of Application Note 8. If both qualify, his base level should be reduced to level 6.

The majority affirms a sentence imposed by a Judge who believed the law prevented her from even considering such matters. Respectfully, I dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

17