UNITED STATES of America,
Plaintiff,

v.

David Christopher GAINES, Defendant.

No. CR. 3:03–CR007.

United States District Court,
N.D. West Virginia
at Martinsburg.

Aug. 15, 2003.

Paul T. Camilletti, Martinsburg, Assistant United States Attorney Northern District of West Virginia.

Barry P. Beck, Esquire, Power, Beck & Matcureff, Martinsburg, for Defendant David Christopher Gaines.

KEELEY, Chief Judge.

The defendant, David Christopher Gaines, objects to the probation officer's recommendation denying him a reduction in his base offense level pursuant to United States Sentencing Guidelines (U.S.S.G.) § 2K2.1(b)(2). That section allows a reduction in a defendant's base offense level to a level six if the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection." Because the surrounding circumstances in the instant case indicate that the defendant possessed the firearms for lawful sporting purposes, the defendant's objection is **SUSTAINED**.

## I

In May 2002, Gaines attempted to redeem a Remington rifle, .270 caliber, that he had previously pawned to Famous Pawnbrokers. During the transaction, he filled out the required forms, including ATF Form 4473. Question twelve on that form asked Gaines if he had ever been convicted of a misdemeanor crime of domestic violence, to which he responded negatively.[1] After the mandatory three-day waiting period, Famous Pawnbrokers returned the firearm to the defendant.

On July 17, 2002, the defendant revisited Famous Pawnbrokers to pawn his firearm. Famous Pawnbrokers submitted documentation of the transaction to the Bureau of Alcohol, Tobacco and Firearms (ATF). An ATF investigation revealed the defendant's prior convictions, and the false statement contained in the ATF Form filed in May 2002. Based on their investigation, the ATF seized the firearm.

In September 2002, an ATF agent interviewed the defendant. When questioned about the Remington rifle, the defendant advised that he owned the firearm for at least fifteen years. He also admitted to owning a second firearm, a .22 caliber rifle, which he stated was a gift from his father. According to the defendant, he used both firearms for hunting or sporting purposes. The .22 caliber rifle was seized after the interview.

On February 4, 2003, a federal grand jury sitting in the Northern District of West Virginia returned a two-count indictment against the defendant. A two-count superseding indictment was returned on February 24, 2003. Count One alleged that he knowingly made a false and fictitious statement of a material fact related to the sale of a firearm, in violation of 18 U.S.C. §§ 922(a)(6) and 922(a)(2). Count Two alleged that he unlawfully possessed a firearm after having been convicted of a misdemeanor crime of domestic violence, in violation of 18 U.S.C. §§ 922(g)(9) and 924(a)(2).

On April 10, 2003, the defendant pled guilty to Count Two. During the Rule 11 hearing, the ATF agent confirmed that the firearms are the types commonly used for sporting purposes. He also indicated that the Remington rifle may be considered a collectible item.

A sentencing hearing was held before this Court on July 29, 2003. Prior to the hearing, a Presentence Investigation Report was prepared by the United States Probation Office and disclosed to the parties. The defendant timely filed an objection to that section of the report concerning the defendant's base offense level. Based on the defendant's violation of 18 U.S.C. § 922(g)(9), and pursuant to U.S.S.G. § 2K2.1(a)(2), the probation officer calculated a base offense level of fourteen. The defendant contends that because the firearms were used for sporting purposes, U.S.S.G. § 2K2.1(b)(2) applies, reducing his base offense level to six.

## II

In certain circumstances U.S.S.G. § 2K2.1(b)(2), also known as the sporting purposes exception, provides a reduction in the base offense level to a level six. Colloquially known as the "sporting purposes reduction," the section reads as follows:

> If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3),

---

1.  Gaines' presentence report indicates that in June of 1999, he was charged with misdemeanor counts of domestic battery and domestic assault stemming from an altercation with his wife. Appearing before the Magistrate Court for Jefferson County, located in Charles Town, West Virginia, the defendant pled guilty to both counts. The court imposed fines totaling $350.00.

(a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level 6.

Three elements must be present to warrant an offense level reduction under § 2K2.1(b)(2): (1) the defendant must not be subject to § 2K2.1(a)(1–5)[2]; (2) the defendant "possessed all ammunition and firearms solely for lawful sporting purposes or collection;" and (3) the defendant "did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition." Once a party objects to the presentence report, a district court is required to make specific findings of its own, based on the evidence presented, or adopt the findings of the probation officer in the presentence report. *See* Fed.R.Crim.P. 32(c)(1) (2003); *See also United States v. Solomon,* 274 F.3d 825.

Gaines clearly satisfies the first requirement of U.S.S.G. § 2K2.1(b)(2), and there is no evidence that he violated the third requirement. It is the second requirement that is the crux of this issue. The government argues that the act of pawning a firearm precludes a defendant from receiving the sporting purposes reduction. Noting the language of § 2K2.1(b)(2), the government asserts that the word "solely" disqualifies a defendant if the firearm is used for any non-sporting purpose. *United States v. Fredman,* 61 Fed.Appx. 82 (2003), an unpublished Fourth Circuit case, seems to support that proposition:

> We find, without difficulty, that the plain language of § 2K2.1(b)(2), as well as the vast majority of the existing case law, support the district court's decision that Fredman is not eligible for the § 2K2.1(b)(2) reduction because he pawned the firearms. *See, e.g., United States v. Solomon,* 274 F.3d 825, 829 (4th Cir.2001); *see also United States v. Clingan,* 254 F.3d 624, 625 (6th Cir. 2001); *United States v. Miller,* 224 F.3d 247, 251 (3d Cir.2000); *United States v. Gresso,* 24 F.3d 879, 881 (7th Cir.1994).

While *Fredman* seems to control the issue, the language indicates that the decision was based on procedural grounds: the district court's decision was not clearly erroneous. There was no substantive holding which mandated that pawning a gun disqualifies a defendant from the sporting purposes exception.

The same argument could be applied to *United States v. Solomon,* the Fourth Circuit case cited by the *Fredman* court. In *Solomon,* the defendant purchased an Intratec 9mm pistol. Several days later, the

---

2. Sections 2K2.1(a)(1–50) provides:

(a) Base Offense Level (Apply the Greatest):
(1) 26, if the offense involved a firearm described in the 26 U.S.C. § 5845(a) [definitions of particular firearms] or 18 U.S.C. § 922(a)(30) [definition of "semiautomatic assault weapon"], and the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense; or
(2) 24, if the defendant had at least two prior felony convictions of either a crime of violence or a controlled substance offense; or
(3) 22, if the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18

U.S.C. § 921(a)(30), and the defendant had one prior felony conviction of either a crime of violence or controlled substance offense; or
(4) 20, if -
(A) the defendant had one prior felony conviction of either a crime of violence or a controlled substance offense; or
(B) the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(30); and the defendant
(i) is a prohibited person; or (ii) is convicted under 18 U.S.C. § 922(d); or
(5) 18, if the offense involved a firearm described in 26 U.S.C. § 5845(a) or 18 U.S.C. § 921(a)(3)

defendant pawned that same pistol. After pleading guilty to a violation of 18 U.S.C. § 922(g)(9), the defendant argued for the sporting purposes reduction without presenting supporting evidence. The district court granted the reduction, but stated in its findings that there was "no evidence that this weapon has been used for *any* purpose." *Solomon* at 829. The Fourth Circuit reversed, arguing that the reduction was improperly granted because "the record lacks any factual basis for the 'lawful sporting purposes or collection' reduction." *Id.* Again, the Court decided the issue on a procedural basis and failed to hold that pawning a firearm disqualifies a defendant from the benefits of U.S.S.G. 2K2.1(b)(2).

In short, there is no real precedent in the Fourth Circuit which controls the issue presented in this case. To wit: does the act of pawning a firearm otherwise used for sporting or collection purposes preclude the application of U.S.S.G. 2K2.1(b)(2)?[3]

Application Note 10 of U.S.S.G. § 2K2.1 provides further guidance to a Court confronted with an issue related to the sporting purposes reduction:

> Under subsection (b)(2), "lawful sporting purposes or collection" as determined by the surrounding circumstances provides for a reduction to an offense level of 6. Relevant surrounding circumstances include the number and type of firearms, the amount and type of ammunition, the location and circumstance of possession and actual use, the nature of the defendant's criminal history (e.g., prior convictions for offenses involving firearms), and the extent to which possession was restricted by local law. Note that where the base offense level is determined under subsections (a)(1)—(a)(5), subsection (b)(2) is not applicable.

While the government emphasizes the importance of the word "solely" in § 2K2.1(b)(2), the application note belies that argument and suggests that a broader factual analysis is warranted. Thus, a defendant's lawful non-sporting use of a firearm does not automatically disqualify him from the sporting purposes reduction. Instead, a court should heed the mandate of Application Note 10 and carefully examine the non-conforming use within the context of the defendant's overall use of the firearm. Such an exercise is critical in determining whether a defendant benefits from U.S.S.G. § 2K2.1(b)(2).

The Tenth Circuit confronted this issue in *United States v. Collins*, 313 F.3d 1251 (10th Cir.2002), and reached a similar conclusion. Despite the fact that the defendant in *Collins* twice used his gun for collateral, the Court found that such activity did not preclude application of the sporting purposes reduction. The Court reasoned:

> [T]he guideline does not indicate whether "purpose" is to be considered as of a particular moment or within the entire context of the defendant's possession. However, comment ten to § 2K2.1(b)(2) indicates that "lawful sporting purposes" is to be determined by reference to "surrounding circumstance." The language of the comment suggests that courts need to conduct a broad analysis of the factual context before determining whether the provision can be applied. Indeed, there would be no need to look to "surrounding circumstances" if any instance of legal, non-sporting use automatically rendered the provision inapplicable.....The district court's focus on the word "solely" in the first half of the provision eviscerates any distinction between possession and use and would

---

**3.** At the sentencing hearing, the government conceded that there is no clear precedent in the Fourth Circuit regarding this particular issue.

render the second part of the provision redundant because any non-sporting use, lawful or otherwise, would preclude application of the provision.

*Collins* at 1254.

In the instant case, Gaines pawned his firearm at Famous Pawnbrokers in order to obtain money to pay his bills.[4] He owned both firearms for a number of years prior to his misdemeanor convictions. He used both firearms for hunting and sporting purposes. The government agent admitted that both firearms are commonly used for hunting and that one firearm may be considered a collectible. Furthermore, there is no evidence that Gaines ever unlawfully discharged the firearms. In fact, no evidence of a non-sporting use was proffered other than the defendant's pawning of the firearm.

The defendant owned the firearms in question for a number of years, he has never used them for an unlawful purpose, and he was merely following a common practice when he pawned them for money. Therefore, the circumstances surrounding the defendant's ownership of the firearms indicate that he should receive the sporting purposes reduction. The defendant's objection is **SUSTAINED.**

It is so **ORDERED.**

The Clerk is directed to transmit true copies of this Order to the defendant and all counsel of record herein.

---

**4.** During the sentencing hearing, the government stated that it is a common practice among local hunters to pawn their firearms during the off season.