**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-2253
_____

UNITED STATES OF AMERICA

v.

KELLY B. SHAULIS,
                              Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Crim. No. 3-18-cr-00033-001)
District Judge: Honorable Kim R. Gibson
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 29, 2021

Before: PHIPPS, NYGAARD, and ROTH, *Circuit Judges*.

(Filed: January 26, 2022)

_____

OPINION[*]
_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PHIPPS, *Circuit Judge*.

A federal jury found Kelly Shaulis guilty of two counts of illegally possessing a firearm as a felon, *see* 18 U.S.C. § 922(g)(1), and the District Court sentenced Shaulis to two concurrent fifteen-month prison terms. In appealing that judgment and sentence, Shaulis now raises four challenges: three to the evidence used against him at trial and one to the calculation of his sentence.

The District Court had jurisdiction over this case because it involves offenses against the laws of the United States. *See* 18 U.S.C. § 3231. And with his timely appeal of that final judgment and sentence, Shaulis properly invoked this Court's appellate jurisdiction. *See* 28 U.S.C. § 1291; 18 U.S.C. § 3742(a). For the reasons below, we will affirm Shaulis's conviction and sentence.

## I.    CHALLENGES TO THE SEARCHES OF SHAULIS'S HOME

Shaulis argues that law enforcement officers violated the Fourth Amendment when they searched his house on two separate occasions. The first search discovered the firearms that were the basis for the first felon-in-possession conviction. The second search produced additional firearms that were the basis for the second felon-in-possession conviction. Through a motion to suppress, Shaulis argued that both searches were illegal and that the evidence gained from them – which included, in total, twelve firearms and 1,207 rounds of ammunition – could not be admitted against him. The District Court denied that motion, and Shaulis disputes that ruling. Examining the District Court's legal conclusions *de novo* and its factual findings for clear error, *see United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002), we see no flaw.

2

## A.    The June 2017 Search of Shaulis's Home

Shaulis claims that after arresting him at home in his kitchen in June 2017, law enforcement officers conducted an overly broad sweep of his house.  The arrest warrant, executed by officers from the Pennsylvania Office of the Attorney General, related to Shaulis's role as a possible supplier of methamphetamine.  After arresting Shaulis, the officers conducted a protective sweep of his house, and in searching a furnished room within the basement, they noticed two rifles propped against the wall.  With knowledge of these rifles, the officers requested a warrant to search the house to investigate whether Shaulis, who had a previous felony conviction, was violating 18 U.S.C. § 922(g)(1), the federal statute that prohibits felons from possessing firearms and ammunition.

A state court granted that warrant request, and in executing the resulting search warrant, the officers found additional firearms and ammunition.  The officers seized the two rifles that they observed propped up against a wall in the furnished room during their protective sweep, and while searching the rest of the basement, they found five rifles and three shotguns in a large, unlocked gun safe.  Altogether, they recovered 621 rounds of ammunition.

The Fourth Amendment permits law enforcement officers, as an incident to arrest, to conduct limited protective sweeps of the premises. Rooms and closets immediately adjacent to the place of arrest may be searched without probable cause or reasonable suspicion.  *See Maryland v. Buie*, 494 U.S. 325, 334 (1990) (holding that "as an incident to the arrest the officers could, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of

3

arrest from which an attack could be immediately launched"); *see also Sharrar v. Felsing*, 128 F.3d 810, 823 (3d Cir. 1997), *abrogated on other grounds by Curley v. Klem*, 499 F.3d 199 (3d Cir. 2007).  A protective sweep may also be conducted in nonadjacent areas upon a reasonable suspicion that other individuals are in those areas and may launch an attack on the officers.  *See Buie*, 494 U.S. at 334; *see also United States v. White*, 748 F.3d 507, 511 (3d Cir. 2014).  Such a sweep is not necessarily "a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found."  *Buie*, 494 U.S. at 335.

Considering the totality of the circumstances, *see United States v. Williams*, 417 F.3d 373, 376 (3d Cir. 2005); *United States v. Price*, 558 F.3d 270, 278 n.6 (3d Cir. 2009), it was reasonable to suspect that a dangerous person was hiding in Shaulis's basement.  At the time of arrest, Shaulis had previously been convicted of a felony for unlawfully possessing a firearm, and he was under investigation for drug trafficking.  The remote location of Shaulis's house, in a rural area at the end of a long driveway, provided an opportunity to notice, and potentially prepare for, the officers' approach.  Upon arriving at the house, the officers noticed that the back door was open, suggesting that someone recently came in or left in a hurry.  The officers knew that Shaulis's wife and son lived in the house, and although they saw his son in the house, they did not see his wife.  Also, as they knocked on the back door to announce their presence, the officers heard yelling in the basement and noticed bullets on the floor of the house.  After five or six minutes, Shaulis emerged from the basement, and he immediately shut the door behind him.  Under these circumstances, the protective sweep of the basement and the

4

furnished room within it, both of which contained guns and ammunition, did not offend the Fourth Amendment.[1]

### B.    The December 2018 Search of Shaulis's Home

Presented with the firearms evidence from the first search, a federal grand jury indicted Shaulis on one felon-in-possession count in December 2018. *See* 18 U.S.C. § 922(g)(1). Shortly afterwards, federal agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives obtained and executed a warrant to arrest Shaulis at his home. During that arrest, the ATF agents observed ammunition and firearms. Based on that discovery, they obtained a search warrant for the whole house. Upon searching the house, they found more firearms and ammunition. Those discoveries led to a superseding indictment that charged Shaulis with a second felon-in-possession count. *See* 18 U.S.C. § 922(g)(1). Through a motion to suppress, Shaulis disputed the legality of the second search under the Fourth Amendment, and the District Court denied that motion. Shaulis now challenges that ruling.

In executing the arrest warrant, ATF agents entered Shaulis's home in two groups. One group entered the first floor. They found Shaulis in the kitchen and arrested him. The second group simultaneously entered the basement, and while they searched for

---

[1] It was also permissible for the officers to rely on their plain-view observations to support an application for a warrant to search the entire house for firearms. *See United States v. Stabile*, 633 F.3d 219, 241 n.17 (3d Cir. 2011) ("[A]n officer's mere observation of an item left in plain view . . . generally involves no Fourth Amendment search . . . . The information obtained as a result of observation of an object in plain sight may be the basis for probable cause or reasonable suspicion of illegal activity." (quoting *Texas v. Brown*, 460 U.S. 730, 738 n.4 (1983) (plurality opinion))).

Shaulis, they observed ammunition and rifle scopes on top of a dresser. One agent looked into Shaulis's large gun safe – which was ajar – and observed a firearm. After opening the door wider, the agent discovered a second firearm. While they searched the basement, the ATF agents in the second group did not know that Shaulis had been found and arrested in the kitchen.

Having observed ammunition and firearms in plain view while executing the arrest warrant, the ATF agents applied for a warrant to search Shaulis's house. They obtained the requested warrant and, after searching Shaulis's basement, they seized a rifle and a shotgun (the guns seen in the gun safe during Shaulis's arrest) as well as 586 rounds of ammunition. None of that evidence was obtained illegally.

In executing an arrest warrant, officers may constitutionally enter a home when two conditions are present. The officers must have a "reasonable belief" that (i) "the arrestee resides at the dwelling" and (ii) "the arrestee is present at the time of the entry." *United States v. Vasquez-Algarin*, 821 F.3d 467, 472 (3d Cir. 2016) (citations omitted); *see generally Payton v. New York*, 445 U.S. 573, 603 (1980) ("[A]n arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."). Both conditions are present here. For the first, the ATF agents knew that the house was Shaulis's residence. And for the second, when the agents approached Shaulis's house early in the morning, they saw his truck in the driveway, and they noticed lights on in a part of the house, leading them to believe that he was present. Those facts,

coupled with the arrest warrant, permitted the agents to enter Shaulis's house to find and arrest him. *See Vasquez-Algarin*, 821 F.3d at 472; *Payton*, 445 U.S. at 603.

Once inside, the officers could search all areas of the house in which Shaulis might have been found. *See Buie*, 494 U.S. at 332–33. Under that standard, the agents could lawfully enter the basement, as Shaulis could have been hiding there. In the basement, they noticed bullets on top of a dresser, and because the gun safe was partially open, one firearm inside was also in plain view. Given the size of the gun safe – "approximately six feet tall, four feet wide, and three feet deep" – it appeared "large enough to potentially conceal a person." *United States v. Shaulis*, 2019 WL 7856722, at *3 (W.D. Pa. Sept. 24, 2019); *see Buie*, 494 U.S. at 332–33. Thus, the officers could permissibly look inside it.

Thus, the officers were permitted to look for Shaulis in the basement as they executed the arrest warrant. And their observations of items in plain view could be used to support an application for a search warrant. *See Stabile*, 633 F.3d at 241 n.17. Accordingly, the District Court did not err in denying Shaulis's motion to suppress the evidence discovered during the second search.

## II.     THE EVIDENCE OF SHAULIS'S PRIOR ILLEGAL POSSESSION OF FIREARMS AS A FELON

Shaulis next challenges the District Court's denial of his motion *in limine*. Through that motion, Shaulis sought to prevent two law enforcement officers from testifying about his possession of firearms as a felon approximately a decade earlier. Shaulis argues that the officers' testimony constitutes impermissible propensity evidence

7

under Rule 404(b), and he has a good point – even under the lenient abuse-of-discretion standard of appellate review. *See United States v. Repak*, 852 F.3d 230, 240 (3d Cir. 2017). But ultimately the evidence against him was overwhelming, and any Rule 404(b) error was harmless.

The first witness, a wildlife conservation officer, testified at trial that he previously observed Shaulis in illegal possession of a firearm. The officer explained that, while on patrol in 2008, he discovered Shaulis dressed in hunting clothes inside his vehicle, pointing a rifle at a deer through the driver's window, while parked in the middle of a road. In addition to providing those details regarding his investigation into the state-law crime of road hunting, the officer testified that he knew that Shaulis was not allowed to possess firearms at that time. The District Court admitted this testimony to prove Shaulis's alleged motive for illegally possessing firearms – to hunt with them.

The second witness, a detective from the Allegheny County District Attorney's Office, testified at trial that in 2008, he saw a box of bullets and a magazine for a firearm on Shaulis's porch. The officer explained that at that time he knew that Shaulis was prohibited from possessing those items due to his status as a felon. Based on his observation of the bullets and magazine, the detective testified that he obtained a warrant to search Shaulis's house and discovered a handgun, four rifles, five shotguns, and 1,547 rounds of ammunition during an ensuing search. The officer indicated that at some point he learned that "Shaulis admitted under oath that he possessed all of those firearms." Trial Tr. at 248:6–7 (Nov. 19, 2019) (JA 867). The District Court admitted that testimony and instructed the jury to consider it "for the purpose of deciding whether there

8

was a lack of accident or absence of mistake regarding [Shaulis's] possession of firearms or ammunition" during the 2017 and 2018 incidents at issue in this case. *Id.* at 262:15–18 (JA 881).

The admission of these witnesses' testimony was dubious. Under Rule 404(b)(1), evidence of "any other crime, wrong, or act" is not admissible to demonstrate "a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1); *see also United States v. Smith*, 725 F.3d 340, 345 (3d Cir. 2013) (explaining that "the basic idea embodied by Rule 404(b)" is that "simply because one act was committed in the past does not mean that a like act was again committed"). Despite that propensity bar, prior-acts evidence is "admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). But even those purposes do not permit the admission of evidence premised on "the propensity-based inferential logic that Rule 404(b) forbids." *United States v. Caldwell*, 760 F.3d 267, 282 (3d Cir. 2014). To evaluate the admissibility of evidence proffered for one of those legitimate purposes under Rule 404(b), this Circuit employs a four-part test. *See United States v. Davis*, 726 F.3d 434, 441 (3d Cir. 2013) (explaining that prior-acts evidence must be offered for a proper purpose under Rule 404(b)(2); relevant to that purpose; sufficiently probative under the Rule 403 balancing test; and accompanied by a limiting instruction, if requested); *see generally Huddleston v. United States*, 485 U.S. 681, 691–92 (1988). Before applying that test, two observations can be made about the motive and absence-of-mistake-or-accident purposes that the government invokes here.

9

First, evidence of motive often overlaps with evidence of propensity so completely that "'motive' . . . is just another word for propensity." 1 Robert P. Mosteller, *McCormick on Evidence* § 190.5 (8th ed. 2020); *see also United States v. Cunningham*, 103 F.3d 553, 556–57 (7th Cir. 1996) (describing the potential "overlap between propensity and motive"). And here, it is hard to see how the prior-acts evidence of motive is independent from the forbidden propensity purpose.

Second, the absence-of-mistake and lack-of-accident purposes relate only to a crime's *mens rea* elements, not its *actus reus* elements. *See United States v. Cordero*, 973 F.3d 603, 620 (6th Cir. 2020) ("Absence of mistake is in issue where a defendant admits involvement in a specific event but asserts that he acted unwittingly or with honest intent." (citation and alterations omitted)); Robert E. Larsen, *Navigating the Federal Trial* § 10:53 (2021 ed.) (stating that a mistake or accident reveals "the absence of knowledge or intent"). Thus, evidence that proves the absence of a mistake or accident has minimal probative value when a defendant's culpable mental state is not disputed. *See United States v. Murray*, 103 F.3d 310, 318 n.5 (3d Cir. 1997) ("[W]ithout any suggestion by the defense that the killing was accidental or occurred in self-defense, it is questionable whether [a prior] killing [admitted under Rule 404(b)] was relevant, and in any event its probative value to show absence of accident or self-defense was undoubtedly negligible."); *see also United States v. Bell*, 516 F.3d 432, 442 (6th Cir. 2008) ("[F]or other acts evidence to be admissible for the purpose of showing absence of mistake or accident, the defendant must assert a defense based on some type of mistake or accident." (citations omitted)); *United States v. Hicks*, 635 F.3d 1063, 1070 (7th Cir.

10

2011) (holding that prior-acts evidence was not admissible "to show that [the defendant's] actions were the result of a mistake" because the defendant "never contended that he did not know that the substance for sale was crack cocaine or any other controlled substance" (citations omitted)).  And here it is far from clear that Shaulis raised a mental-state defense such that the prior-acts evidence would be needed to show an absence of mistake or accident.  *See* 22B Kenneth W. Graham, Jr., *Federal Practice and Procedure (Wright & Miller): Evidence* § 5255 (2d ed. 2021) ("Judges should take care that they confine this use to cases in which mistake or accident seems a plausible defense.").

Those observations forecast that the prior-act evidence of Shaulis's illegal possession of firearms a decade earlier should have been excluded under Rule 404(b).  But it is not necessary to formally conduct a four-part analysis here because, even if the District Court erred, the error was harmless due to the volume of admissible evidence of Shaulis's guilt.  *See generally Caldwell*, 760 F.3d at 285 ("The test for harmless error is whether it is highly probable that the error did not contribute to the judgment," and this high probability "requires that the court possess a sure conviction that the error did not prejudice the defendant." (citations and internal quotation marks omitted)).  A total of twelve firearms and hundreds of rounds of ammunition were discovered inside and immediately next to a room in Shaulis's basement, which he calls his "man cave," Trial Tr. at 85:8 (Nov. 21, 2019) (JA 1198), which he "practically lived in," *id.* at 45:25 (JA 1162), and which he agreed was his "domain" and described as his "room," *id.* at 86:14, 21 (JA 1199).  The firearms and ammunition were found propped against the wall, on top

11

of furniture, and in an unlocked, open gun safe – all readily accessible to Shaulis.

Recognizing that the government can prove constructive possession under § 922(g)(1) "by showing that [the defendant] exercised dominion or control over the area in which the weapon was found," *Caldwell*, 760 F.3d at 278 (citation omitted), and with this overwhelming evidence of firearms in areas controlled by Shaulis, any error in admitting prohibited propensity evidence was harmless. *See id.* at 285; *United States v. Helbling*, 209 F.3d 226, 241 (3d Cir. 2000).

## III.    THE DISTRICT COURT DID NOT ERR WHEN IT DECLINED TO REDUCE THE BASE OFFENSE LEVEL FOR SHAULIS'S OFFENSES

As a final challenge, Shaulis contends that the District Court miscalculated his sentence. After the jury returned guilty verdicts on both felon-in-possession counts, *see* 18 U.S.C. § 922(g)(1), Shaulis argued that under Sentencing Guideline § 2K2.1(b)(2), the base offense level for his crime should not be fourteen but instead six. *Compare* U.S.S.G. § 2K2.1(a)(6)(A) (base offense level fourteen), *with id.* § 2K2.1(b)(2) (base offense level six). But to qualify for that lower base offense level, Shaulis had to establish by a preponderance of the evidence that he "possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition." *Id.* § 2K2.1(b)(2); *see also United States v. Miller*, 224 F.3d 247, 250–51 (3d Cir. 2000). The District Court determined that Shaulis did not meet that burden, and Shaulis now disputes that ruling.

12

In reviewing that decision under the "deferential abuse-of-discretion standard," *Gall v. United States*, 552 U.S. 38, 52 (2007), we will affirm.

Shaulis failed to establish that he possessed all of the ammunition and firearms solely for lawful sporting or collection purposes. He did not submit that he possessed any of his guns or ammunition for collection purposes. Instead, he argued that the firearms and ammunition were used for solely sporting purposes – either hunting or target shooting. *See United States v. Massey*, 462 F.3d 843, 846–47 (8th Cir. 2006) (indicating that hunting may be a 'lawful sporting purpose'); *United States v. Mason*, 692 F.3d 178 (2d Cir. 2012) (same); *United States v. Bossinger*, 12 F.3d 28 (3d Cir. 1993) (holding that a form of target shooting called 'plinking' is a sport). But because Shaulis must make that showing for all of his firearms and ammunition, his proof breaks down – quickly. One of his shotguns was held together by duct tape and was not safe to fire. With the inability to safely fire that weapon, it is unlikely that Shaulis possessed it solely to hunt or shoot targets. Similarly, the ammunition in Shaulis's possession cannot be easily reconciled with hunting or target-shooting purposes. Some of that ammunition was for semiautomatic handguns, which are not approved for hunting in Pennsylvania. *See* 34 Pa. Cons. Stat. § 2308(a)(2). And although that ammunition could have been used for target practice, Shaulis presented no evidence that he possessed it for solely that purpose.

These examples demonstrate Shaulis's failure to prove that he possessed *all* of the firearms and ammunition *solely* for lawful sporting purposes, and thus the District Court did not abuse its discretion in calculating Shaulis's base offense level.

13

\* \* \*

For the foregoing reasons, we will affirm the judgment of conviction and the judgment of sentence.